## CAROLYN E. BROOKS vs. ROBERT C. PIELA.

No. 02-P-1501.

Hampshire. December 15, 2003. - August 30, 2004.

Present: DUFFLY, SMITH, & DOERFER, JJ.

*Divorce and Separation,* Child support, Modification of judgment.

In an action brought by a mother seeking modification of an award of child
    support, the Probate and Family Court judge did not abuse her discretion
    by considering the husband's enhanced income and the resulting disparity
    in the standards of living in the parental households, where implicit in the
    judge's order was a consideration of the children's needs in light of that
    disparity, as well as of the stipulated evidence reflecting that the age of the
    children and their increased expenses warranted an adjustment in support.
    [733-738]

COMPLAINT for divorce filed in the Hampshire Division of the
Probate and Family Court Department on October 3, 1994.

A complaint for modification, filed on May 26, 1998, was
heard by *Gail L. Perlman,* J.

*Thomas P. Vincent* for the defendant.

*Linda S. Fidnick* for the plaintiff.

DUFFLY, J. When Carolyn Brooks and Robert Piela were
divorced in 1996, the divorce judgment required Robert to pay
$650 per week in child support to Carolyn, the primary
custodian of their five minor children.[1] Five years later, Carolyn
filed a complaint for modification alleging that Robert's income
had increased, that their son's needs required his enrollment in
a private boarding school, and that "the needs of the children
have increased significantly." The parties reached agreement
regarding contribution to the private school costs of their
thirteen year old son, but could not resolve Carolyn's request
for increased child support.

---

[1]The oldest child, a daughter, was born December 30, 1987; the parties' son
was born July 10, 1989; their three younger daughters were born December
24, 1990; March 11, 1992; and May 20, 1994.

Following trial,[2] a judgment of modification entered on August 28, 2002, increasing Robert's support obligation to $800 per week. In his appeal from that judgment, Robert contends that, apart from expenses of the son's private school, there was no evidence of increased costs to Carolyn of maintaining the children that could not be met out of her income, which had also increased, and that it was error of law to consider, as the Probate and Family Court judge did in this case, the disparity in the standards of living in each parent's household resulting from Robert's increased income. We conclude that the judge did not abuse her discretion by considering, as a component of the children's needs, Robert's increased income and his standard of living. We note that, in addition, the stipulated evidence, see note 2, *supra,* reflects that the actual expenses of the children had also increased.

*Facts and proceedings.* The parties are physicians and were employed full-time when they divorced and at the time of the modification proceeding. Prior to trial on Carolyn's complaint for modification they agreed that their son should continue to be enrolled in the boarding school in which Carolyn had enrolled him the preceding year, and that they each would contribute one half of the $27,000 total annual cost of tuition, fees, and room and board.[3] Their agreement on this point was later incorporated in the judgment of modification and does not survive the judgment as an independent contract.

With respect to the issue of increased child support, the probate judge found that, since the parties' divorce in December, 1996, Robert's annual income had more than doubled from $130,000 to $278,900 ($35,000 of which was deferred compensation) and that Carolyn's annual income, which was $145,000 at the time of the divorce, had increased to $192,000 (including $5,000 in pension contribution). The judge found

---

[2]By agreement of the parties, the "trial" proceeded on the arguments of counsel, agreed-to exhibits, and stipulations of the parties.

[3]In light of the parties' resolution of this issue, we do not recite the alleged bases for this aspect of the modification request, except to note that it appears to have been in response to special needs of the child not shared by the other children, all of whom continue to attend public school. It is apparent from the record that the parties were assisted by a parenting mediator or monitor in resolving the issue of their son's enrollment in boarding school.

that as a result of Robert's increased income he was able "to afford a new home and to amass significant cash assets to use for that purchase and for repeated travel with the children. He has taken flying lessons." While there are no explicit findings as to the increase in the children's expenses in addition to the cost of boarding school for the son, it is apparent from the record that the children now were taking music lessons, for which musical instruments were rented as well as purchased, and that they were attending summer camp.[4] Robert concedes in his brief that after "discounting expenses arguably not a part of maintenance for the children," Carolyn's weekly expenses had increased by "$549.13[, of which] $254.00 is the increased cost for the [son's] education."

The judge concluded that "[t]he difference between the parties' salaries at the time of the hearing is itself a material change of circumstance," and that it was not in the best interests of the children to experience a disparity in the standards of living between the two parents' households. In addition, she based the increased award on the fact that the parties' agreement to contribute to the son's boarding school costs "falls unequally on them as a result of th[e] difference" in their incomes.

*Discussion.* Robert does not directly argue that the Probate Court judge should be precluded from, in effect, modifying the parties' agreement to contribute equally to the son's private

---

[4]Camp and music lessons were not listed as expenses on Carolyn's financial statement at the time of the divorce, although she did indicate that the average cost of "children's lessons" was $50 per week. In a financial statement filed during the pendency of the modification action, Carolyn's listed expenses include $124.50 per week for children's music lessons, $40.63 per week for children's instrument rentals, and $169.59 per week for children's summer camps.

The fact that Carolyn's financial statement reflects expenses actually being incurred has some bearing on the issue, but is not alone dispositive. We recognize that some custodial parents are not in a position to incur financial obligations on behalf of their children in the absence of an order that will require at least some contribution from the noncustodial parent. Significant to the determination of this case, involving as it does very high income parents, is that the expenses were for such life-enhancing activities as summer camp and music lessons which are reasonable and appropriate to the standard of living enjoyed by Robert, whether or not Carolyn had already incurred the expense. Expenses as reported by the custodial parent are not necessarily indicative of the children's needs. See note 8, *infra.*

school costs by ordering him to pay an amount that reimburses Carolyn for her share of this expense. He has not briefed the question of the extent to which a trial court should give effect to agreements governing support obligations and those in the nature of support (such as contributions to college, private school, or summer camp expenses) to which the Massachusetts Child Support Guidelines (guidelines) do not presumptively apply. Compare *Bercume* v. *Bercume*, 428 Mass. 635, 644 (1999) (addressing alimony modification: "A judge who modifies a divorce judgment does not write on a tabula rasa. To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties"); *Downey* v. *Downey*, 55 Mass. App. Ct. 812, 817 (2002). We need not decide this issue, however. Even assuming that the judge was required to give effect to the agreement, her findings, both explicit and implicit, and the stipulated facts support the result reached.

Robert argues that an order increasing child support based solely on his increased earnings constitutes an abuse of discretion in the absence of a showing that there was also an increase in the children's reasonable expenses, and that the increase here was improperly based on the trial judge's expressed "concern that one [household] is significantly better off than the other." Although the disparity in the standards of living between households was appropriately considered by the probate judge, the modification judgment was not based solely on this factor. Implicit in the judge's consideration of this disparity is consideration of the children's needs, defined in the light of Robert's higher standard of living.

A child support judgment may be modified on a finding "that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children." G. L. c. 208, § 28, as amended by St. 1985, c. 490, § 1. "Of the several factors which the judge may consider in modifying a decree for child support, . . . this court has never required that they be accorded equal weight or conjunctive application. In any given case the judge as fact finder may thus attribute greater significance to a change in the husband's net worth than to changes in the needs or life

style of the wife or children." *Heistand* v. *Heistand*, 384 Mass. 20, 27 (1981). See *Buchanan* v. *Buchanan*, 353 Mass. 351, 352 (1967) (in revising prior order of support, consideration is to be given to "the needs of the children, the financial status of the former husband, and the station in life of the respective parties"); *Thompson* v. *Thompson*, 12 Mass. App. Ct. 917, 918 (1981) (upholding modified alimony and child support based on former husband's increased income and assets; although former wife's income had also increased, it was still much less than that of former husband); *Fugere* v. *Fugere*, 24 Mass. App. Ct. 758, 759-760 (1987), and cases cited. Compare *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 89 (1991) (modification judgment reversed because the judge's findings focused solely on the father's reduced income and failed to address "needs, requirements or standard of living" of the mother or the parties' children). Thus, the fact that Carolyn's income had also increased and that she could pay the increased expenses of the children was not dispositive, particularly because the increase in her earnings was proportionately much less than that of Robert.[5] Cf. *Dennis* v. *Dennis*, 29 Mass. App. Ct. 161, 165 (1990) (evidence that the mother has been able to meet certain financial obligations since the divorce does not require finding that support presently available for children is adequate; "a judge may consider a child's 'standard of living' in deciding whether the level of available support for that child is inadequate," quoting from *Ames* v. *Perry*, 406 Mass. 236, 242 [1989]).

---

[5]American Law Institute commentary notes that among the values sought to be addressed by formulas for child support based upon a percentage of income, such as the guidelines, is the interest of the custodial parent "in not being disadvantaged, as compared to the child's other parent, by the financial opportunity costs of [custodial] responsibility, that is, by the amount, if any, by which [custodial] responsibility for a child diminishes that parent's earning capacity." American Law Institute (ALI) Principles of the Law of Family Dissolution: Analysis and Recommendations § 3.04 comment e, at 426 (2002). See *id.* § 3.04 comments b, c, d & f, at 424-428.

We also note that, whereas Robert's increased income permitted him to make contributions to his retirement account in the amount of $30,000 per year, Carolyn's contributions were limited to $5,000 per year. According to the parties' financial statements, Robert increased the amount he expended on vacations, from $5,200 a year at the time of the divorce to $15,000 at the time of the modification. Carolyn decreased spending on vacations from $2,600 to $2,132 per year.

Relying on *Pearson* v. *Pearson*, 52 Mass. App. Ct. 156 (2001), Robert argues that, with respect to high-income parents, upward modification based solely on increases in a noncustodial parent's income constitutes income-sharing and is disfavored, and that the focus should be on whether the "reasonable needs" of the children are being met. *Id.* at 160-161 & n.6. *Pearson* does not, however, preclude taking into account the higher standard of living of the noncustodial parent in determining a child's needs. That this is so may be seen in the decision of the Supreme Judicial Court in *Department of Rev.* v. *Mason M.*, 439 Mass. 665 (2003).[6] In that case, the court determined that the probate judge had improperly reduced child support below the minimum presumptive amount calculated on the basis of the maximum noncustodial parent income to which the guidelines were then applicable ($75,000), and that on remand, the probate judge was to order at least the minimum presumptive amount of child support and "to consider the question of an additional sum based on [the child's] needs and the father's ability to pay more than the presumptive minimum level of support." *Id.* at 677.[7] This determination was made notwithstanding that the mother's stated expenses were less than this amount, *id.* at 668,

[6]In *Department of Rev.* v. *Mason M.*, 439 Mass. at 666, the probate judge ordered support in the context of an adjudication of paternity of an out-of-wedlock child. The father (a physician who was married and had two marital children) had annual income of $104,408, which exceeded the income level to which the guidelines were then applicable. *Id.* at 667 & n.6. At the time of the paternity judgment that ordered support, the mother (of the child who was the subject of the action) was unemployed and receiving public assistance. *Id.* at 666-667. The judge calculated weekly presumptive minimum child support due under the guidelines to be $389.42, but reduced that amount by a hypothetical sum needed for the support of the father's wife and two marital children. *Id.* at 667-668 & n.7, 670-671. The Supreme Judicial Court reasoned that the hypothetical amount needed to support his wife and marital children "could be fully satisfied from the father's excess income above $75,000," *id.* at 672, further noting that "it is neither unreasonable nor unjust to require noncustodial parents to adjust their monthly expenses in order to provide for the support of their minor children in a manner that will best serve their welfare." *Ibid.*

[7]Also on appeal in that case was the dismissal of a complaint for modification brought by the Department of Revenue on behalf of the mother and the Department of Transitional Assistance, following entry of the paternity judgment. The father's wife — also a physician — had returned to work, and thus, the court concluded, it was a genuine issue of material fact whether this meant that there would be additional income for the support of the marital

and irrespective of the absence of a historically higher station in life enjoyed by the mother and child. The *Mason M.* case thus supports the proposition that, consistent with principles underlying the guidelines, children's needs are to be defined, at least in part, by their parents' standard of living and that children are entitled to participate in the noncustodial parent's higher standard of living when available resources permit.[8] Significant to the court's decision was the fact that "[t]he guidelines were promulgated with several fundamental social policies in mind," *id.* at 669, two of which are relevant here: "(1) to 'encourage joint parental responsibility for child support in proportion to, or as a percentage of income'; [and] (2) to 'meet the child's survival needs in the first instance, but to the extent either parent enjoys a higher standard of living to entitle the child to enjoy that higher standard' . . . . Child Support Guidelines, preamble." *Id.* at 669-670. In addition to the policies reiterated in the *Mason M.* case, the guidelines contain this relevant principle: "To provide the standard of living the child would have enjoyed had the family been intact." Child Support Guidelines, preamble.

*Conclusion.* Based on the foregoing, the Probate and Family Court judge appropriately considered Robert's enhanced standard of living and the resulting disparity in parental households. Implicit in the judge's order was a consideration of the children's needs in light of that disparity, as well as of the stipulated evidence reflecting that in the years since the divorce the oldest child had reached the age of thirteen (which, under the guidelines, would warrant an adjustment equal to ten percent of the support award), and that the children's expenses were

children, thereby making more of the father's income available for the support of the subject child. *Department of Rev.* v. *Mason M.*, 439 Mass. at 674.

[8]This higher standard includes the ability to provide certain opportunities (such as private school education; specialized training in music, art, or sports; summer camps; and cultural travel), at least if a child would likely have enjoyed those opportunities had the child lived with the noncustodial parent. See American Law Institute (ALI) Principles of the Law of Family Dissolution: Analysis and Recommendations § 3.04(2) & comment j, at 423, 431 (2002); *id.* § 3.12 & comment a, at 513-514. See also *id.* § 3.04 & comment c(ii), at 423-425.

greater as a result of music lessons and summer camp. It was well within the judge's discretion to increase support by $150 per week.

*Judgment affirmed.*