## Anna Katzman[1] vs. Timothy Healy.

No. 09-P-2341.

Suffolk. April 8, 2010. - September 7, 2010.

Present: Duffly, Dreben, & Kafker, JJ.

*Divorce and Separation,* Child custody, Child support, Modification of judgment, Separation agreement. *Parent and Child,* Child support.

In the circumstances of a proceeding on a complaint for modification of a judgment of divorce nisi in which the mother, who had sole physical custody of the children, sought, inter alia, permission to remove the children to live with her new spouse (who lived in New Jersey and worked in New York City), and in which the father sought (in light of the mother's request for removal) increased parenting time with the children and physical custody, the probate judge erred in substantially increasing the father's parenting time, without making findings reflecting substantial and material changed circumstances, such that the wife's sole physical custody was effectively transformed into an unofficial form of joint physical custody [593-594]; further, the probate judge's denial of removal required remand, where the judge substantially discounted the significance of the mother's sole legal custody, and apparently blurred, in his analysis, the separate tests for removal where there is sole or shared physical custody [594-597].

In the circumstances of a proceeding on a complaint for modification of a judgment of divorce nisi in which the mother sought, inter alia, an increase in child support, the probate judge did not abuse his discretion in calculating the increase in child support by limiting the father's income to his base salary and not making the award retroactive to the date on which notice was given of the filing of the complaint for modification, where the judge based his decisions as to child support on provisions in the parents' separation agreement [598-599]; further, there was no abuse of discretion in the judge's calculation of the increase, given the provision in the separation agreement contemplating adjustment in child support, the substantial increase in the father's income since the divorce, and the children's entitlement to share in the lifestyle of the parents [599-600].

Complaint for divorce filed in the Suffolk Division of the Probate and Family Court Department on January 9, 2004.

A complaint for modification, filed on March 5, 2007, was heard by *Jeremy A. Stahlin,* J.

[1]Formerly known as Anna Roglieri.

*Michael P. Friedman* (*Ann Wagner* with him) for the mother.
*Wendy H. Sibbison* for the father.

KAFKER, J. The mother, Anna Katzman, who has sole physical custody of her two children, appeals from a Probate and Family Court amended modification judgment. The judgment modified the custodial arrangements to provide the father, Timothy Healy, essentially equal parenting time without finding a substantial and material change in circumstances, denied the mother and children's removal to New York or Connecticut, and increased child support less than the mother requested. The father cross-appeals, contending that the increased child support order was not justified. We conclude that the trial judge erred by disregarding, or at least discounting, the significance of the mother's sole physical custody of the children, both in his modification of the custodial arrangements or parenting time and his denial of removal. In so doing, he blurred the distinction between the removal tests set forth in *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704 (1985), and *Mason* v. *Coleman*, 447 Mass. 177 (2006). We do, however, affirm the judge's order increasing the amount of child support, as it was contemplated in the separation agreement and justified by the substantial increase in the father's salary and the disparity in the parties' respective life styles.

*Background.* The parents in the instant case were married in 1995. They have two children, Hunter, born April 6, 2000, and Kierstin, born September 13, 2001. The parents separated in May, 2003, and in January, 2004, the mother filed a complaint for divorce. In January, 2006, a judgment of divorce nisi issued (subsequently corrected), which incorporated into the judgment a thirty-nine page separation agreement.[2]

Under the terms of the separation agreement, the mother and father were to have joint legal custody of the children and the wife was to have sole physical custody and act as primary child care provider. The children were to be with the mother at all times unless otherwise specified. The children were to be with the father every other weekend and Tuesday and Thursday after school or camp until 6:45 P.M. on Tuesdays and 7:15 P.M. on Thursdays. Holidays and vacations were alternated.

---

[2]Relevant here, according to the judgment nisi, the "provisions related to the children . . . [are] merged and shall not survive."

Pursuant to the separation agreement, the father was to pay the mother the sum of $2,903.33 per month as child support. This amount was based upon the father's weekly income at the time, "exclusive of bonuses," as set forth in his financial statement. The separation agreement further provided, "In the event that he receives a cash bonus during any year then he shall pay to the wife within 45 days from his receipt of said bonus a sum equal to 20% of the net bonus amount as additional child support."[3] The husband was, at the time of the divorce and trial, the founder and chief executive officer of EnerNOC, Inc. (EnerNOC), a company providing energy consulting services to commercial industrial facilities. At the time of the divorce, he was earning $150,000 per year and the company had not yet gone public. The mother was employed as a clinical nurse specialist earning $42,000 per year. The parents then had a negative net worth of $34,000. The father did own substantial stock in EnerNOC. Pursuant to the separation agreement, the mother received forty-five percent of the father's stock, which amounted to 605,535 shares.

In March, 2007, the mother filed a complaint for modification, essentially seeking an increase in child support. As of March 30, 2007, the father's base salary had risen to $325,000. The father filed a cross complaint requesting increased time with the children. By this point the father had married Jaimee Manninen and had his first child in the new marriage.

In May, 2007, EnerNOC's initial public offering occurred with a closing price of $30.16 per share. Also, in May, 2007, the mother met Robert Katzman, a Federal Bureau of Investigation (FBI) agent living in New Jersey and working in New York City. In August, 2007, the mother became engaged to Mr. Katzman. Mr. Katzman did not "wish to transfer from the New York office of the FBI to any other location because the Public Corruption Squad in New York is dedicated exclusively to that work . . . and he has contacts there which make him more effective in his work." He also believed that he lacked the seniority to transfer to the Boston office.

In September, 2007, the mother amended her complaint to

---

[3]There was also a provision providing for adjustments to child support. See 598-599, *infra.*

seek removal, which the father opposed. The father also sought primary physical custody. A judge of the Probate and Family Court appointed a guardian ad litem in October, 2007, to report to the court on custody, visitation, and removal. In February, 2008, three days before trial, the mother married Mr. Katzman; they were expecting their first child in October, 2009. The father and Ms. Manninen's second child was born in June, 2008.

Trial on the complaint for modification lasted twenty-three days. Both parents were found to have good parenting skills and positive, nurturing relations with the children. Hunter was found to be strongly attached to his mother, "especially strongly attached to his father," and "strongly attached to Ms. Manninen." He also "gets along well with Mr. Katzman . . . [and] [h]is attachment to Mr. Katzman is newer and not as strong as his attachments to his parents and to Ms. Manninen." The judge found that Hunter "wishes to continue to spend extensive periods of time in both households, and he does not wish to move from the area where his father and step-mother live." The judge found that Hunter's "fear of having less time with his father in the future is a significant element of his anxiety." The judge found Hunter's anxiety about the family situation to be severe.

Kierstin was found to be "clearly emotionally attached" to the mother, Mr. Katzman, the father, and Ms. Manninen. Kierstin was also found to "prefer that the present parenting arrangement stay the same."

The mother's motivation for removal was to be "able to live with her husband, their baby . . . and the parties' children within commuting distance of Mr. Katzman's job." The mother was "not motivated by any wish to less[e]n the father's relationship with the children."

Finally, from the time of the divorce until trial, the parties' finances substantially changed. As of March, 2007, the judge found that "the father's base salary had increased to $325,000 . . . and it remained at that level through the beginning of the trial . . . in February of 2008." The value of EnerNOC stock had fluctuated, but the judge found the closing price to be $32.76 per share on February 12, 2008. Also, at the beginning of trial, the mother was earning $85,000 from her employment

as a clinical nurse specialist. In June, 2008, the project the mother was working on ended, and the mother became voluntarily unemployed.

*Discussion.* 1. *Parenting time.* The father sought increased parenting time with the children and physical custody, at least if the mother insisted on removal. The judge, without finding a change in circumstances, essentially transformed the wife's sole physical custody of the children into a joint physical custody arrangement. This was error.

As provided by G. L. c. 208, § 28, as amended by St. 1993, c. 460, § 60, "the court may make a judgment modifying its earlier judgment as to the care and custody of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children." In the instant case, the separation agreement provided that the mother "shall have sole physical custody of [the] children and act as primary child care provider." The children were to be with her except every other weekend, blocks of time after school and summer camp on Tuesdays and Thursdays, and alternate holidays and vacations. The judge, however, without finding a change in circumstances, adopted a "5/2 split" recommended by the guardian ad litem. The children would essentially be with the mother Tuesdays and Wednesdays, and the father would have them Thursdays and Fridays. The parents would alternate having the children on weekends, meaning from Friday until Tuesday morning.

According to the judge, this "recommendation of the guardian . . . [was] that the children continue to spend what she deem[ed] to be approximately equal time with the parents but with fewer transitions and minimized parent contact at the transitions." The judge and the guardian considered this significant change to be a continuation of "approximately equal time" because of their focus on time spent with the parent when the children were not at school, camp, or asleep.[4] The judge described this approximate equality as follows: during the "28

---

[4]To show the parenting time by category, the judge created an elaborate "Parenting Time Calculations" chart that purported to track the children's asleep, awake, and school or camp time.

day rotation . . . , the mother's approximate percentage of awake time with the children would go from 42% to 36%, and the father's from 22% to 28%."[5] The judge did not consider it important for his equality analysis that the mother originally had eighty-two percent of the sleep time while the father only had eighteen percent. Under the new schedule, the mother's sleep time percentage would drop to fifty-seven percent while the father's would increase to forty-three percent.

The law has not, however, neatly divided custodial parenthood into waking, sleeping, and schooling categories. Nor should it. Disregarding sleep or school time ignores that children get sick, have nightmares, and otherwise require their parent's assistance at unexpected times. See *Kawatra* v. *Kawatra*, 182 S.W.3d 800, 803 (Tenn. 2005) ("The responsibilities of a parent do not end when a child is asleep, at school or day care, or otherwise outside of the parent's presence"). An important part of parenting is being available to children whenever needed, night or day. Under the separation agreement, that role was primarily provided by the mother who had sole physical custody.

In sum, the judge ignored the importance of sole physical custody and the time and commitment that it involves. In substantially increasing parenting time for the father, he effectively transformed the wife's sole physical custody into an unofficial form of joint physical custody. To the extent the judge wanted to extend joint physical custody to the father, findings reflecting substantial and material changed circumstances supported by the evidence were required. See *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 261 (2001). No such findings were made here, and therefore so much of the amended modification judgment as increases parenting time for the father and decreases parenting time for the mother is reversed.[6]

2. *Removal.* The judge's handling of the parenting issue casts

---

[5]The judge allotted the remainder of the children's "awake" time to school or camp.

[6]We recognize that the judge found that the conflict between the parents rendered the transfers of the children between parents difficult and unpleasant for the children. Whether this problem had worsened is unclear from the record. There was certainly, however, no finding that this constituted a change of circumstances justifying a modification of custody. Rather, it was an appropriate subject for the parenting coordinator required by the separation agreement,

doubt on his removal analysis as well. Although the judge expressly cites reliance on the *Yannas* test, applicable where one parent had sole physical custody of the children, and not the *Mason* test, where physical custody is shared, his reservations are apparent and his actual application of the *Yannas* test uncertain. See *Yannas* v. *Frondistou-Yannas*, 395 Mass. at 710-712; *Mason* v. *Coleman*, 447 Mass. at 183-186. He states, for example, that the "evidence is clear that the children have become fully integrated into both households and consider that they have two homes. The grownups may be aware of the distinctions involving legal and physical custody, but the children only know that there are two places where they spend frequent time and are loved and feel at home. It is the opinion of the guardian at litem that it is not a 'psychologically viable alternative' for the children to move from this area."

Our concerns about the judge's analysis arise in the balancing of interests called for in the second part of the *Yannas* inquiry, which applies to this case. See *Yannas* v. *Frondistou-Yannas*, 395 Mass. at 711-712. There is no question that the first part of *Yannas* is satisfied, namely that there is a real advantage to the custodial parent in moving. See *id.* at 711. The judge properly found that the "mother in this case has a sound and sincere wish to live with her new husband, the child they are expecting together, and her two older children. The mother has also established that she is not seeking to deprive the father of his relationship with the children." See *Pizzino* v. *Miller*, 67 Mass. App. Ct. 865, 873 (2006).

The issue is how the judge analyzed and weighed the respective interests of the mother and the father in evaluating the best interests of the children. The judge's decision, colored in large part by its focus on the children's "full integration" into two parenting relationships he considered essentially equal, seems to have diminished the importance of the mother's role as sole physical custodian.

Under *Yannas*, the advantages and disadvantages of moving

---

but which had not been implemented. The judge in the amended modification judgment required the hiring of a parenting coordinator as originally required in the separation agreement. We discern no error in that part of the judgment requiring the parents to select and utilize a parenting coordinator.

or not moving to the parent who has sole physical custody are a "significant factor in the [best interests of the child] equation." *Id.* at 870. See *Yannas* v. *Frondistou-Yannas*, 395 Mass. at 711-712; *Signorelli* v. *Albano*, 21 Mass. App. Ct. 939, 940 (1985); *Wakefield* v. *Hegarty*, 67 Mass. App. Ct. 772, 777 (2006). This is true because "the best interests of a child are so interwoven with the well-being of the custodial parent." *Yannas* v. *Frondistou-Yannas*, 395 Mass. at 710, quoting from *Cooper* v. *Cooper*, 99 N.J. 42, 54 (1984). See *Hale* v. *Hale*, 12 Mass. App. Ct. 812, 815 (1981); *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 266 (2001); *Dickenson* v. *Cogswell*, 66 Mass. App. Ct. 442, 451 (2006); *Prenaveau* v. *Prenaveau*, 75 Mass. App. Ct. 131, 139-140 (2009). The judge here does state that the "mother will be happier if she is able to live with her husband at an address he can return to each workday evening, and her children will derive some benefit from that increased happiness," but his focus and emphasis are clearly on the disruption of the two-home option. He finds, for example, that "[i]t cannot be said that the benefit to the children flowing from their mother's increased happiness in New York or Connecticut would outweigh the loss to them of the regular and frequent time in their other home."

Consequently, the judge's decision appears actually to apply a *Mason*-like approach to removal, that is "[w]here physical custody is shared, a judge's willingness to elevate one parent's interest in relocating freely with the children is often diminished. . . . No longer is the fortune of simply one custodial parent so tightly interwoven with that of the child. . . . [Rather,] [w]here physical custody is shared and neither parent has a clear majority of custodial responsibility, the child's interests will typically 'favor protection of the child's relationships with both parents because both are, in a real sense, primary to the child's development.' " *Mason* v. *Coleman*, 447 Mass. at 184-185 (citation omitted).[7]

Given the judge's substantial discounting of the significance

---

[7]We note that "[s]hared physical custody in particular carries with it substantial obligation for cooperation between the parents. Such an arrangement, by its nature, involves shared commitment to coordinate extensively a variety of the details of everyday life." *Mason* v. *Coleman*, 447 Mass. at 182. Such cooperation is obviously not present here.

of sole physical custody and apparent blurring of the *Yannas* and *Mason* tests, we conclude that a remand as to removal is necessary here. As part of that remand, other important factors should be more fully analyzed and evaluated than they were in the amended findings of fact of the modification judgment. Most importantly the judge concludes that "[r]emoval would be devastating to Hunter." This conclusion must be grounded in specific subsidiary fact-finding to support it. See *Abbott* v. *Virusso*, 68 Mass. App. Ct. 326, 333 (2007), *S.C.*, 450 Mass. 1031 (2008) ("Apart from the conclusory observation that '[m]oving to Arizona would adversely affect the emotional needs of [the son],' there is no subsidiary finding regarding the potential advantages or disadvantages of the move to him"). Cf. *Dickenson* v. *Cogswell*, *supra* at 452 ("Here, the move would have clear and significant negative effects on the child. These effects, as the court in *Yannas* . . . emphasized, are 'most important' "). Although the evidence may support such fact finding, they have not been made here.

Secondly, the judge finds that "[i]t is Mr. Katzman's understanding that he would not have enough seniority in the FBI to transfer to the Boston office at this time." Whether a transfer is in fact not an option is a relevant consideration for the judge. Assuming Mr. Katzman is unable to relocate, the judge should examine how the mother's unhappiness from raising her children in Massachusetts while living separated from her husband would affect the children. See *Signorelli* v. *Albano*, 21 Mass. App. Ct. at 940 (judge must give adequate weight "to the quality of life of the custodial parent by reason of the separations enforced on her [and] on her husband"). That factor is of particular importance here given the mother's role as sole physical custodian.

Finally, the judge should give further consideration and make additional fact findings about the practical repercussions of traveling if removal were allowed. Given that the judge found that the "cost of travel to and from New York or Connecticut is not a factor for either parent," the judge should weigh whether plane travel, instead of automobile, would be possible and beneficial, and if so, whether the mother's preferred home is sufficiently close to an airport to facilitate the visits. Other arrangements that would minimize the children's travel should also be considered.

3. *Child support.* The mother claims that the judge abused his discretion in calculating the increase in child support by limiting the father's income to his base salary and not making the award retroactive to the date notice of the filing of a complaint for modification was given. See generally *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999) (discussing permissive but not mandatory authority pursuant to G. L. c. 119A, § 13[*a*], to modify support retroactively during period in which complaint for modification is pending). "A judge who modifies a divorce judgment does not write on a tabula rasa. To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties." *Bercume* v. *Bercume*, 428 Mass. 635, 644 (1999). See *Downey* v. *Downey*, 55 Mass. App. Ct. 812, 817 (2002); *Cooper* v. *Cooper*, 62 Mass. App. Ct. 130, 134-135 (2004); *Mandel* v. *Mandel*, 74 Mass. App. Ct. 348, 351-352 (2009). The judge here based his decisions as to child support on provisions in the parents' separation agreement. The agreement stated that "the amount of child support paid by the Husband to the Wife is based upon his current weekly income . . . exclusive of bonuses. In the event that he receives a *cash* bonus during any year then he shall pay to the wife . . . 20% of the net bonus amount as additional child support" (emphasis added). Although the mother argues that "[t]his provision reflected the fact that, at the time of the parties' divorce, stock in the father's closely held company was valued at $0," we agree with the judge's assessment that this issue is something that "the parties should have reasonably foreseen" during the negotiations. We discern no abuse of discretion in the judge's decision.

The separation agreement further provided: "Commencing on February 15, 2008 and every three (3) years thereafter, the parties shall exchange with one another financial information . . . to be contained in preparing a child support guidelines worksheet . . . . The purpose of the exchange of such information shall be the calculation of the future weekly child support amount. Said payments shall be retroactive to the first of the year. If the parties are unable to agree upon such a modification, then either party may file a Complaint for Modification . . . ." Based on this provision, we discern no abuse of discretion in the judge's deci-

sion to make child support retroactive to January 1, 2008. Again, the judge's decision was based on the parents' agreement, which did not contemplate an adjustment in child support until January 1, 2008.

Finally, the father contends that the judge erred in calculating the amount of child support, which increased from $2,903.33 to $6,028.33. The judge was justified in ordering a modification as it was contemplated in the parties' separation agreement and supported by the father's substantial increase in income and a material disparity in the parties' respective lifestyles. The judge found that "[t]he income and net worth of each party has increased dramatically since the Judgement of Divorce Nisi, primarily as a result of . . . the increase in the father's compensation as chairman and chief executive officer of [EnerNOC] . . . ." The judge further found that "[e]ven with additional child support, the mother will not be able to match the life style the father has for the children, which is not to suggest that the children will not be very financially comfortable in their mother's care."[8] "Implicit in the judge's consideration of this disparity is consideration of the children's needs, defined in the light of [the father's] higher standard of living." *Brooks* v. *Piela*, 61 Mass. App. Ct. 731, 734 (2004).

The father argues that rule IV of the Massachusetts Child Support Guidelines requires a finding that there was a "gross disparity in the standard of living between the two households." See Massachusetts Child Support Guidelines IV (2009). That provision applies when the court or the parties deviate from the guidelines. However, the "guidelines are not meant to apply where the combined annual gross income of the parties exceeds $250,000. In cases where income exceeds this limit, the Court should consider the award of support at the $250,000 level as the minimum presumptive order. Additional amounts of child support may be awarded in the Court's discretion." *Id.* at II-c.

---

[8]The judge found that the father's new home in Concord "will have six plus bedrooms, multiple baths, a big back yard, a big side yard, an indoor basketball court for the children, an upstairs art studio for the children and a detached carriage house." The mother, for reasons that remain unclear, continued to live in the same two-bedroom apartment she had lived in since the divorce despite her ample stock holdings. As represented in briefing at oral argument, she did, however, eventually buy a large home in Connecticut.

In the instant case, the judge calculated the presumptive minimum at $2,754.74 per month, which was lower than what the father was paying.[9] The judge then added fifteen percent of the increase of the father's base salary since the judgment of divorce nisi to the original order of $2,903.33. The fifteen percent marginal rate is assigned to the highest income bracket in the child support guidelines. Given the provision in the separation agreement contemplating adjustment in child support, the substantial increase in the father's income since the divorce and the children's entitlement to share in the lifestyle of the parents, we discern no abuse of discretion in the judge's calculation.

*Conclusion.* So much of the amended modification judgment as increases parenting time for the father and decreases parenting time for the mother is reversed. So much of the amended modification judgment as denies removal by mother is vacated, and that matter is remanded for further proceedings consistent with this opinion. In all other respects, the amended modification judgment is affirmed.

*So ordered.*

---

[9]The father calculates the presumptive minimum in his brief to be $2,808 per month. This discrepancy does not alter our analysis.