NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-436

REGINA L. FALLACE

vs.

DAVID R. FALLACE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

David R. Fallace (husband), the former spouse of Regina L. Fallace[1] (wife), appeals from a judgment of the Probate and Family Court which, among other things, effectively dismissed his complaint for modification in which he sought a reduction in his child support obligations. The judge made detailed and substantial findings of fact, all of which support her award of current and retroactive child support for the parties' two children, who were fourteen and sixteen years old at the time of the modification trial. As we discuss in more detail below, we

---

[1] As is our practice, we use the names of the parties as they appear in the initial complaint. We recognize that the wife's name is now Regina L. Altreuter.

discern no basis to disturb the judgment, which we affirm in its entirety.

Background.  We summarize the relevant facts as found by the judge, supplemented where necessary by the undisputed evidence in the record.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).  The parties had been married for almost twenty years when they were divorced by a judgment of divorce nisi (divorce judgment) in January 2018.  As part of their separation agreement (agreement), which was merged in part with the divorce judgment, the husband was required to pay weekly child support to the wife in the amount of $1,384 based on an imputed income of $400,000.  In addition, the husband was required to pay (1) fifteen percent of his "gross employment-related income" over $400,000 and up to $600,000 to the wife, and (2) twenty percent of his "gross employment-related income" over $600,000 and up to $800,000 into existing § 529 college savings accounts for the parties' children (529 accounts).  "Gross employment-related income" was defined in the agreement to exclude passive investment income.

In August 2019, the husband had been working for Polaris Partners as an advisor for about two years when his position was eliminated and he became unemployed.  Due to his loss of income, he filed a complaint for modification, seeking a recalculation of his child support obligation "in accordance with the amount

that would result from application of the Child Support Guidelines" then in effect.  See Child Support Guidelines (July 2023) (guidelines or child support guidelines).  Prior to trial on the modification complaint and on a separate modification complaint filed by the wife, the husband sought and obtained a temporary order in January 2020, which reduced his child support obligation to $335 per week and required him to seek employment. About one year later, in January 2021, the husband amended his complaint for modification and requested sole legal and primary physical custody of the parties' children, the termination of his child support obligation, and that the wife pay him child support.

The trial began in October 2021 before a different judge and had proceeded for three nonconsecutive days when, in December 2021, the judge suspended it so that the parties could resolve discovery issues with a discovery master, whom the judge appointed.  During the suspension, the wife filed a motion seeking to increase the husband's temporary child support obligation, which the judge allowed.  The new temporary order, dated September 21, 2022, reversed the January 2020 temporary order by reinstating the husband's $1,384 weekly child support obligation retroactive to January 15, 2020, and requiring the husband to make a retroactive child support payment of $163,796. The husband filed a motion seeking relief from this temporary

3

order, which was denied. In denying the motion for relief, the judge explained that the husband "filed a financial statement, and the parties filed a Stipulation of Uncontested Facts, showing income for 2019 through the present from all sources equivalent to or in excess of that earned by [the Husband] at the time of . . . the original support order." She also noted that the September 2022 temporary order "puts the parties back to the same position as at the time of divorce . . . without prejudice to the arguments and evidence advanced at trial."

The trial then resumed in September 2023 and concluded, after five more nonconsecutive days, in January 2024. In a comprehensive judgment of modification and separate findings of fact, the judge first found that at the time of the divorce, the husband's annual salary was $300,000. By 2019, that salary had increased to $600,000. The judge credited the husband's testimony that he then lost his job in 2019. However, the judge did not credit the husband's testimony that he declined to accept a severance agreement, which would have provided him with total severance of $200,000, because doing so "would make him unmarketable for his job search." The judge also found that the "vast majority of [the husband's] employment search efforts were focused on establishing his own" venture capital fund (fund). While unemployed, the husband's annual gross income was temporarily reduced to approximately $370,000 in 2020 and about

4

$230,000 in 2021. However, once the fund was established and generating income, the husband earned over $1.2 million in 2022 and "[a]t least $1,559,000" in 2023. As of the last day of trial, the husband was owed an additional $900,000 for work that he performed in 2023. The judge did not credit the husband's testimony that he anticipated earning less income in 2024. The judge found that the wife's income had also increased, from approximately $80,000 per year at the time of the divorce, to $150,000 per year at the conclusion of the trial.

The judge concluded that the parties' increased incomes was a material and substantial change in circumstances justifying a modification of the husband's child support obligation. The judge then modified the percentage-based child support obligation, relating to the husband's annual income in excess of $400,000, in two ways. First, the judge removed any reference to "gross employment-related income," as defined in the agreement. Second, the judge ordered the husband to pay ten percent of "all gross income over $800,000" per year to the wife. These modifications were retroactive through 2022 and 2023, and the husband was ordered to pay $45,839.10 for 2022 and $133,400 for 2023, "representing 10% of [the husband's] . . . income over $800,000" in those years. As to the husband's weekly child support obligation, however, the judge made no changes.

5

Discussion.  The husband argues that (1) the judgment's provision for weekly child support is inconsistent with the child support guidelines presumptive amount and unsupported by required findings; (2) the judge abused her discretion by failing to retroactively reduce his weekly child support obligation; (3) the judge abused her discretion by modifying his percentage-based child support payments; and (4) the judge miscalculated his 2023 income in establishing his retroactive payment for that year.  He also argues that several of the judge's factual findings are clearly erroneous.

We begin our discussion of the issues with a summary of the pertinent legal framework.  Pursuant to the child support guidelines, "[a] child support order may be modified if . . . [t]here is an inconsistency between the amount of the existing order and the amount that would result from the application of the guidelines" or if "[a]ny other material and substantial change in circumstances has occurred."  Guidelines, § III(A).  When determining the appropriate amount of child support, there is "a rebuttable presumption that the amount of the order which would result from the application of the guidelines is the appropriate amount of child support to be ordered."  G. L. c. 119A, § 13.  This presumption may be overcome, however, in certain circumstances, including by an agreement of the parties or where the presumptive order would be unjust, inappropriate,

6

or not in the best interests of the parties' children. See Guidelines, § IV(B). When deviating from the guidelines, a judge must enter "specific written findings" to support the deviation. Guidelines, § IV(A). Alternatively, a judge may "apply [an] existing deviation" from the guidelines when modifying a child support obligation, if the obligation already diverged from the guidelines presumptive order. Guidelines, § III(B).

We review a modification of child support for an abuse of discretion, see Smith v. Smith, 105 Mass. App. Ct. 505, 508 (2025), and "accept the judge's findings of fact as true unless they are clearly erroneous" (citation omitted), Whelan v. Whelan, 74 Mass. App. Ct. 616, 619 (2009).

1. The weekly child support obligation. The husband first argues that his current weekly child support obligation should have been reduced to $1,079 per week on the grounds that the amount awarded ($1,384) was (1) inconsistent with the guidelines presumptive amount and (2) unjust in light of the wife's increased income at the time of trial. He further contends that the judge erred by not making the written findings required by section IV of the guidelines to support a deviation from the presumptive amount. See Wasson v. Wasson, 81 Mass. App. Ct. 574, 579 (2012) ("while it is in the sound discretion of the judge to modify an existing child support order, when the

7

modification involves a deviation from the guidelines, both

[G. L. c. 208, § 28,] and the guidelines require that the judge

explain the deviation in specific written findings").[2]

We discern no abuse of discretion.  First, we note that the

husband's total child support obligation was inconsistent with

the presumptive guidelines figure at the time he filed his

complaint for modification and at the time that the modification

judgment entered, because it required the husband to pay more

than ten percent of his annual income over $400,000.

Guidelines, § II(C) ("In cases where combined available income

is over $400,000 . . . the Court should consider the award of

support at the $400,000 level as the minimum presumptive order

. . . [and] any percentage applied to the payor's income above

the maximum level . . . should be below" ten percent).  In

addition, although section IV of the guidelines requires a judge

to make specific findings when deviating from the presumptive

guidelines amount, section III of the guidelines separately

_____

[2] We are not persuaded by the wife's claim that the husband "waived or abandoned" this issue because the husband's amended complaint for modification does not allege an inconsistency between the divorce judgement's child support order and the guidelines presumptive order or a change in circumstances as to the wife's income.  In his amended complaint, the husband requested that he pay "child support payments to the [wife] in accordance with the amount that would result from application of the Child Support Guidelines."  This request sufficiently preserved the issue.

allows for the continued application of preexisting deviations. See Guidelines, § III(B). In this case, the judge specifically found that "[t]he parties agreed to . . . a deviation" at the time of the divorce.[3] Section III states that "the Court shall apply the existing deviation to the modification action if" three conditions are met: (1) the facts giving rise to the deviation still exist; (2) the deviation continues to be in the children's best interests; and (3) the guidelines amount would be unjust or inappropriate under the circumstances. Id.

These conditions were met in this case. First, as to the facts giving rise to the deviation, the judge found that the parties agreed that the husband would pay a weekly amount and that, "as [the husband's] income increased, . . . he would pay child support of a specific percentage . . . given that [the husband's] variable income exceeded the maximum amount" considered by the guidelines.[4] After trial, the husband's income

_____

[3] We assume arguendo that this was a deviation. But see Smith, 105 Mass. App. Ct. at 516.

[4] At oral argument, the husband challenged this finding, arguing that the fact giving rise to the deviation was the "attribution" of $400,000 of annual income to the husband in the agreement, when he actually earned $300,000 per year. Where the husband earned more than $400,000 per year by the conclusion of trial, he contends that the fact giving rise to the original deviation no longer existed. However, the agreement imputed, rather than attributed, the income to the husband, and he stipulated for the modification trial that he earned over $400,000 at the time of the divorce.

continued to be variable and to exceed the amount considered by the guidelines. As to the other criteria, the judge found that a reduction in the husband's weekly support obligation, including during the period when the husband was unemployed and building his fund, "would be contrary to the children's best interests and inappropriate in this case." In so finding, the judge "considered [the husband's] lack of forthrightness relative to his job search, his income, his assets, . . . and the totality of the circumstances, most importantly the needs of the children." Accordingly, the judge did not abuse her discretion in declining to modify the husband's weekly child support obligation. Nor has the husband provided any authority for the proposition that the judge was required to make deviation findings pursuant to section IV(A) of the guidelines when she applied the existing deviation under section III(B). Although "§ IV of the guidelines requires that the judge make specific written findings when deviating from the guidelines," Wasson, 81 Mass. App. Ct. at 577, no such requirement appears in section III. We will not read a requirement into the guidelines which is not there. Cf. City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 789 (2019) ("Where language in certain provisions is noticeably absent from other provisions of the same statute, such as here, we have consistently held that the language should not be implied where it is not present" [citation omitted]).

10

At the same time, the increase in the wife's income, which was modest relative to the husband's, would not necessarily constitute a change in circumstances requiring a reduction of the weekly award, where the wife's income was but one of multiple factors the judge could have considered. "Of the several factors which the judge may consider in modifying a decree for child support, . . . this court has never required that they be accorded equal weight or conjunctive application" (citation omitted). Brooks v. Piela, 61 Mass. App. Ct. 731, 734 (2004). "In any given case the judge as fact finder may thus attribute greater significance to a change in the husband's net worth than to changes in the needs or life style of the wife or children" (citation omitted). Id. at 734-735. It was not an abuse of discretion for the judge to give more weight to the parties' agreement, the children's needs, and the husband's income and assets, than to the wife's increase in income.

2. Retroactive weekly child support payments. The husband argues that the judge abused her discretion when she declined to grant him a retroactive reduction of his weekly child support obligation due to his reduced income from January 2020 through September 2022. Again, we disagree.

The husband first argues that a retroactive reduction was required because the wife testified that she was able to pay for the children's expenses during the time his weekly child support

11

payments were reduced by the temporary order entered in January 2020. In effect, he argues, without citation to any authority, that child support payments can be reduced so long as the recipient parent is able to cover all child related expenses. This argument is flawed for a number of reasons, not the least of which is that it is not supported by the record. While the wife covered the children's expenses, she did so by withdrawing funds from her retirement accounts, thereby reducing the amount of her assets.

Next, the husband challenges certain findings relating to his efforts to find employment, the severance offered by his former employer, and whether he was "forthcoming with his income and assets" as clearly erroneous. However, he does not dispute that while he was unemployed, he declined a severance agreement, made successful efforts to establish a fund, and maintained his lifestyle. Nor does he dispute that his assets had increased in value by the conclusion of trial, or that his reduction in income was temporary. See Schuler v. Schuler, 382 Mass. 366, 373 (1981) (where payor's "reduced income is temporary, a modification is not necessarily mandated"); P.F. v. Department of Revenue, 90 Mass. App. Ct. 707, 710 (2016) (ownership of valuable assets may be considered when determining payor's ability to pay child support). Instead, he focuses on subsidiary findings about the sincerity of his efforts to obtain

traditional employment, his reasons for not accepting severance from his former employer, and his disclosure or nondisclosure of certain assets. Those findings did not contribute materially to the judge's ultimate analysis as to this issue, and thus, even if they were erroneous, there was no abuse of discretion. Furthermore, at least some of these findings were based on the judge's credibility determinations, which we accord "the utmost deference" (citation omitted). Yahna Y. v. Sylvester S., 97 Mass. App. Ct. 184, 185 (2020).

3. Percentage-based child support. The husband also argues that the judge abused her discretion by modifying his percentage-based child support obligation to remove the limitations imposed by the agreement as to the form and amount of his income considered in determining the obligation. He contends that the change was contrary to the desires of the parties as expressed by the agreement and excessive in light of the needs of the parties' children, where the judge found that the husband's lifestyle did not materially change "after the parties' divorce."

The husband is correct insofar as "[a] judge who modifies a divorce judgment does not write on a tabula rasa. To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties" (citation omitted). Katzman

13

v. Healy, 77 Mass. App. Ct. 589, 598 (2010).  But agreements are nonetheless modifiable as to child support, and "[p]arents may not bargain away the rights of their children to support" (citation omitted).  Cavanagh v. Cavanagh, 490 Mass. 398, 418 (2022).  Furthermore, the judge's findings and rationale show that she did, in fact, take the agreement into account when modifying the husband's child support obligation.  Not only did the judge specifically refer to the agreement and its terms, she preserved the general structure of the award, including the weekly baseline child support order and the unique provision that the husband pay a portion of his obligation directly into the 529 accounts that had been established for the parties' children, rather than to the wife.

Moreover, the changes the judge made were not excessive, and did not "fall[] outside the range of reasonable alternatives" (citation omitted).  Bobblis v. Costa, 94 Mass. App. Ct. 264, 266 (2018).  Instead, they were grounded in changes in circumstances material to the issue of child support.  See Brooks, 61 Mass. App. Ct. at 735-737.  Where, as here, the husband's income had increased dramatically, it was not an abuse of discretion to order child support on income over $800,000 per year to account for that increase.  Furthermore, given that the husband transitioned from traditional employment to earning income through a fund he formed and at which he was a partner,

14

it was not an abuse of discretion to expand the definition of income to account for the husband's level of control over his future earnings. Cf. Halpern v. Rabb, 75 Mass. App. Ct. 331, 335 (when determining whether corporate earnings should be included when calculating child support, judge should consider shareholder's level of control over distributions). Furthermore, an agreement to exclude certain forms of income "does not control when determining what income is available for child support" in subsequent modifications. Jones v. Jones, 101 Mass. App. Ct. 673, 687 (2022). See Guidelines, § I(A) ("income is defined as gross income from whatever source").

Finally, the husband is also correct that child support is "rooted in a determination of need, which is defined, at least in part, by the[] parents' standard of living" (quotation and citation omitted). Macri v. Macri, 96 Mass. App. Ct. 362, 368 (2019). Nonetheless, we are not persuaded that the judge's finding that the husband's lifestyle did not materially change "after the parties' divorce" precluded modification of his percentage-based child support obligation, as the husband contends. Even assuming that the finding referred to his lifestyle at the time of trial, and not only to when he was unemployed, the husband's lifestyle was not the only relevant factor. See Brooks, 61 Mass. App. Ct. at 734-35. There was evidence that the expenses of the children had increased.

15

Likewise, the judge did not find that there was "no material disparity in the standard of living in the respective parents' households."  Smith v. Edelman, 68 Mass. App. Ct. 549, 554 (2007).  As such, the judge did not abuse her discretion by considering the husband's increased income and assets when making her determination.

4.  The husband's 2023 income.  The husband also challenges the calculation of his retroactive child support obligation for income over $800,000 for 2023, arguing that the judge's implicit finding of his earnings in 2023 was clearly erroneous.  The husband was ordered to pay $133,400 for 2023, implying that he earned $2,134,000 in income in that year.  The husband points us to the judge's finding that he earned "[a]t least $1,559,000" in 2023, and her finding that the chief financial officer of the fund "credibly testified that [the husband's] total income for 2023 would be approximately $1,700,000" for the year, to support his argument that the retroactive payment is unsupported by the record, and therefore clearly erroneous.

The wife agrees that the amount of the husband's 2023 income implicitly found by the judge was erroneous.  However, she argues that the husband's actual income would support a higher, rather than lower, retroactive payment.  Indeed, the record shows that the judge found, in addition to the findings discussed above, that the husband earned $1,259,000 in

16

distributions from his fund through June of 2023, received "guaranteed payments" of $300,000 that year, and was "owed $900,000" in unpaid distributions for 2023 as of the last day of trial. As such, we are not persuaded that the judge's implicit determination of the husband's income was erroneously high.[5]

**Modification judgment affirmed.**

By the Court (Vuono, Sacks & Ditkoff, JJ.[6]),

Clerk

Entered: March 27, 2026.

---

[5] The wife's request for appellate attorney's fees and double costs is denied. The husband's request for attorney's fees is similarly denied.

[6] The panelists are listed in order of seniority.