SUSAN ROSE SMITH vs. ROBERT R. EDELMAN.

No. 06-P-217.

Norfolk. January 18, 2007. - April 2, 2007.

Present: KAFKER, BROWN, & GREEN, JJ.

*Divorce and Separation,* Child support, Modification of judgment.

A judge of the Probate and Family Court did not abuse her discretion in
concluding that a substantial postdivorce increase in the income of the
noncustodial parent did not constitute a material change in circumstances
warranting an increase in child support, where the children's needs were
well met and where there was no material disparity in the standards of liv-
ing between the custodial and noncustodial households. [553-555]

COMPLAINT for divorce filed in the Norfolk Division of the
Probate and Family Court Department on October 19, 1995.

Complaints for modification, filed on July 23, 1999, and May
31, 2001, were heard by *Christina L. Harms,* J.

Following review by the Appeals Court, 61 Mass. App. Ct.
1125 (2004), the case was remanded for reconsideration, and
the matters were again heard by *Harms,* J.

*Linda A. Ouellette* for the plaintiff.
*Deborah J. Bero* for the defendant.

GREEN, J. Does a substantial postdivorce increase in the
income of a noncustodial parent constitute a material change in
circumstances warranting an increase in child support, where
the children's needs are well met and there is no material dispar-
ity in the standards of living between the custodial and noncus-
todial households? A judge of the Probate and Family Court
answered the question in the negative, and denied so much of
the wife's complaint for modification as sought an increase in
child support. We conclude that the judge did not abuse her
discretion and affirm the judgment.

*Background.* When the parties divorced on November 12,

1996, the judgment nisi incorporated their previously executed separation agreement, which addressed, inter alia, the topics of alimony, child support, and payment of private school tuition for the parties' two children through the sixth grade.[1] The wife filed a complaint for modification on May 31, 2001, seeking additional contribution toward private school tuition costs and an increase in child support, based principally on a substantial increase of the husband's income.[2] After a trial, a judge of the Probate and Family Court ordered the husband to make additional contribution toward tuition costs, but denied the requested increase in child support. The wife appealed and, following issuance of our opinion in *Brooks* v. *Piela*, 61 Mass. App. Ct. 731 (2004), we remanded the matter to the Probate and Family Court for reconsideration in light of that opinion. See *Smith* v. *Edelman*, 61 Mass. App. Ct. 1125 (2004).[3] On remand, the probate judge held a trial and entered supplemental findings of fact based on the evidence adduced at the trial.[4] However, she concluded, as before, that no increase in child support was warranted. The case is again before us on the wife's appeal.

We summarize the trial judge's findings of fact. The parties were married in 1981, and divorced in 1996. Two children were born of the marriage: a son, born in 1986, and a daughter, born in 1989.

Under the terms of the parties' separation agreement, the husband paid alimony in the amount of $4,500 per month until September 30, 2001, when his alimony obligation terminated.

---

[1]The provisions of the separation agreement concerning child custody, child support, and expenses for the children's education and medical care were merged into the judgment.

[2]The wife had previously, on July 22, 1999, filed a complaint for modification, seeking only tuition costs; the two complaints were consolidated for trial.

[3]The memorandum and order pursuant to rule 1:28 observed that, as our opinion in *Brooks* v. *Piela*, *supra*, had not issued at the time the trial judge rendered her judgment in the present case, its discussion was not available to the judge and did not inform the exercise of her discretion.

[4]Our order of remand did not direct the nature or scope of the proceedings on remand, and neither party has raised any issue concerning the determination by the trial judge to take additional evidence and enter supplemental findings of fact incident to her reconsideration of the case. Though the evidence at the trial after remand included some information on matters occurring after the first trial, the judge limited her findings — and her reconsideration — to the period ending with the first trial.

The parties share legal custody of the children, with primary physical custody with the wife and visitation by the husband. The husband paid the wife $4,500 per month in child support through September 30, 2001, and $5,500 per month thereafter.[5]

At the time of the parties' divorce, the children attended a private elementary school in Newton, at a combined annual cost for both children of approximately $10,000. The parties' separation agreement provided that the husband would pay two-thirds, and the wife one-third, of the children's education costs through the completion of the sixth grade. The separation agreement made no provision for payment of private school tuition beyond the sixth grade. However, beginning in the seventh grade, and continuing through the trial on the complaint for modification, the parties' son attended a private secondary school in Belmont, at an annual cost between $20,000 and $24,000. In addition, in the fall of 2000, the parties' daughter began attending a private secondary school in Wellesley, at an annual cost of approximately $24,000.

The judge expressly found that there had been no material change in the children's needs since the divorce, and that the sole material change in the financial needs related to the children was the continuation — and increased cost (from $10,000 to $44,000 annually) — of private school tuition beyond the sixth grade.

The trial judge specifically found that the children's attendance at private schools was not necessitated by any special educational needs of the children, and that it was the wife, over the husband's objection, who wished the children to continue in private school beyond the grade level addressed in the parties' separation agreement. However, the judge nonetheless ordered the husband to pay two-thirds, and the wife one-third, of the children's respective continuing tuition costs.[6]

---

[5]The agreement provided for child support to end upon emancipation of both children, but did not provide for any adjustment upon emancipation of only one of the two children. Beginning in October, 2002 (a date which followed the period covered by the complaint for modification), the child support payments adjusted annually based on the increase in the Consumer Price Index.

[6]Neither party appeals from the judge's decision concerning payment of tuition costs.

The husband is a physician whose gross income from all sources at the time of the divorce was $302,600. The wife did not work after the first year of the parties' marriage, but is a college graduate capable of employment and, as found by the trial judge, underemployed by choice.[7] Both parties remarried following their divorce, but the trial judge did not consider the incomes of their respective new spouses in considering the wife's request for modification.[8]

In June, 2000, the husband moved to Illinois to accept a more lucrative position. His gross income rose from $374,000 in 1999 to $554,000 in 2000. In 2001, the husband's total income increased to approximately $720,000, of which approximately $200,000 derived from a bonus resulting from a one-time departmental merger.

On remand, the judge entered supplemental findings specifically directed to the comparative lifestyles of the husband and wife (and of the children while in their respective households). The former marital home (owned and occupied by the wife) is a nicely furnished four-bedroom home on a large lot in an upper class neighborhood in Wellesley.[9] Before moving to Illinois, the husband purchased and resided in a three-bedroom home on a

---

[7]The wife chose not to work until October of 2001, when she began working eighteen hours per week, at an hourly rate of $15.00 per hour. Contrary to the wife's contention on appeal, however, in weighing the wife's complaint for modification the judge does not appear to have imputed an additional earning capacity to the wife so much as to have given effect to the terms of the parties' separation agreement, under which alimony payments were to terminate after five years, together with the absence of any material change in the parties' circumstances concerning alimony: the judge explicitly stated her view that the wife's request for increased child support constituted an attempt to replace the income previously furnished by monthly alimony.

[8]Neither party claims that the judge erred in declining to consider the effect of the parties' respective new spouses on their financial circumstances. The judge observed in her supplemental findings, but disavowed any reliance upon, the fact that both parties had suffered some degree of financial setback as a result of their remarriage: the wife's new husband (a technology executive) lost his job around the time her entitlement to alimony ended under the separation agreement, and the husband's new marriage ended in divorce, pursuant to which he paid his new wife a substantial lump sum property settlement.

[9]Pursuant to the parties' separation agreement, the wife acquired title to the former marital home in Wellesley, valued at the time of the modification trial

small lot in a middle class neighborhood in Newton. In Illinois (after selling the Newton residence), the husband purchased a four-bedroom home on a small lot in a middle class neighborhood.[10] The judge concluded that the wife's housing was superior to the husband's "in every way."[11] The judge found that the children attended day camp while visiting the husband during the summer, and that the mother did not enroll the children in camps while in her custody; however, the judge did not consider the children's camp attendance to be a heightened lifestyle opportunity furnished by the father so much as "his form of childcare, appropriate and necessary for a working, non-custodial parent." The judge expressly found no disparity of lifestyle between the two households in the areas of dining out, clothing, birthday parties, or automobiles (the wife drove a 1988 Volvo, the husband a 1994 Toyota, then a used BMW). The husband belonged to a health club but no country club; the wife maintained membership in a nine-hole golf club. The children traveled rather extensively with both parents, to Ireland in 2000 and London in 2001 with the wife, and to Australia in 1999 and India and the Far East in 2000 with the husband.[12]

*Discussion.* In *Brooks* v. *Piela,* 61 Mass. App. Ct. at 732, we held that a judge did not abuse her discretion by considering, as a component of the children's needs, a substantial increase in the noncustodial parent's income and standard of living since

at approximately $900,000 and with net equity (after deducting the aggregate principal balance outstanding on mortgage debt) of approximately $665,000.

[10]The husband paid $685,000 for the Illinois residence. The record does not reflect the principal amount of the mortgage on that residence, but the monthly mortgage payments were approximately $4,400.

[11]The Wellesley home is on a large wooded lot of more than an acre across the street from the Charles River, while the Illinois home is situated on a lot of approximately one-sixth acre, located approximately one block from an interstate highway.

[12]The judge placed significant emphasis on the fact that much of the husband's travel was related to his business, with the effect that much of the expense was paid by other sources. We express no view on whether the availability of a third-party source of funds for travel should affect consideration of the travel itself in assessing the parties' comparative lifestyles; regardless of the source of funds, in the present case any disparity between the parties on the topic of travel is not so great as to compel a conclusion that their over-all standards of living, based on all factors, were materially disparate.

the time of the parties' divorce. Like the present case, *Brooks* v. *Piela* involved a relatively affluent family in which the children's basic needs were more than adequately met, and the available income far exceeded the levels to which the Massachusetts Child Support Guidelines apply. We observed there that "children's needs are to be defined, at least in part, by their parents' standard of living and . . . children are entitled to participate in the noncustodial parent's higher standard of living when available resources permit," *id.* at 737, in furtherance of the principle that such support should "provide the standard of living the child would have enjoyed had the family been intact." *Ibid.*, quoting from Child Support Guidelines, preamble. See also *Department of Rev.* v. *Mason M.*, 439 Mass. 665, 669-670 (2003).

In the present case, however, in contrast to *Brooks* v. *Piela*, the trial judge found that there is no material disparity in the standard of living in the respective parents' households.[13] There is accordingly no need in the present case to transfer any portion of the husband's increased income in order to counterbalance such a disparity. Moreover, the goal of maintaining the standard of living of the family as though it had remained intact is not without limit; an increase in child support based solely on an increase in income of the noncustodial spouse may have the effect of constructively distributing the noncustodial parent's estate, and is accordingly disfavored. See *Pearson* v. *Pearson*, 52 Mass. App. Ct. 156, 160 (2001). Even were we to accept the wife's contention that the husband is capable of providing a greater financial contribution toward the children's needs by reason of his increased income, we reject her suggestion that an increased capacity compels an increase in child support, at least where the increased capacity has not resulted in a material disparity in the parties' respective lifestyles.[14]

On the wife's complaint for modification, the judge consid-

[13]Though the mother disputes various of the judge's factual findings on appeal, on our review of the record she has not shown them to be clearly erroneous. See *Brash* v. *Brash*, 407 Mass. 101, 105 (1990).

[14]Though there was evidence that the husband was able to make contributions to his retirement account, and that the wife was not able to amass comparable savings, such differences in savings bear on the accumulation of assets and wealth by the parties themselves rather than the lifestyles that they —

ered the children's needs, the terms of the parties' separation agreement, the changes in the parties' circumstances since the divorce, and with particularity after remand, their respective lifestyles since the divorce. She concluded that the termination of alimony payments to the wife was expressly contemplated by the parties' separation agreement, and accordingly did not constitute a material change in circumstances. She found no material disparity in the parties' respective lifestyles in the period since the divorce, despite the husband's increased income. To the extent there was evidence tending to suggest that the wife struggled in recent times to maintain her lifestyle at its elevated status, in comparison to the relative ease with which the husband was able to maintain his equivalent lifestyle, the judge was within her discretion to attribute the wife's strain principally to her election not to obtain more lucrative employment (or, alternatively, to apply other assets allocated to her under the parties' agreement) when her entitlement to alimony ended. We discern no abuse of discretion in the judge's denial of the wife's request for increased child support, and affirm the judgment.[15]

*So ordered.*

---

and, more significantly for our purposes, their children — enjoy. The judge made no finding that the wife's inability to save for retirement furnished cause to fear that her present lifestyle was unsustainable.

[15]In the exercise of our discretion, we deny the husband's request for attorney's fees on appeal.