## M.C. *vs.* T.K.

Norfolk. December 5, 2011. - August 15, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Parent and Child,* Child support, Support of child born out of wedlock. *Paternity. Probate Court,* Paternity proceeding.

Discussion of the child support guidelines, and of the premise that child support should be calculated as a percentage of parental income, up to a maximum income amount, with that percentage varying based on level of income and number of children. [231-233]

In an action to establish paternity where the parties shared physical custody of the child, the Probate and Family Court judge did not abuse her discretion in awarding child support in a manner consistent with the principles of the child support guidelines [233-234]; however, the judge's income-equalization formula, which was intended to place both parties in an equal financial situation regarding their net income and to give each home an equal amount of income for the benefit of the child, was inconsistent with principles reflected in those guidelines and decisional law, and should not have been employed [234-236]; further, the child support award had no factual basis, where the judge made no finding that the mother was unable to provide for the child's reasonable needs while the child was in her care in a manner consistent with the mother's standard of living, and where the evidence did not support an implied finding that the standard of living the child experienced at her mother's home was grossly inferior to that which she enjoyed while living with her father [236-237]; moreover, this court vacated those portions of the judgment obligating the mother to pay certain child-related expenses, as they could be affected by the judge's further consideration whether, and in what amount, child support is appropriate [237-239].

In a paternity action, the Probate and Family Court judge did not err in attributing income to the father, who had retired and, having no pension or retirement accounts, instead paid for ordinary living expenses by drawing on a savings account set up for that purpose; further, the judge did not abuse her discretion in looking to assets to determine the amount of a child support award. [239-241]

In a paternity action, the record supported the Probate and Family Court judge's denial of the father's request for attorney's fees. [242]

COMPLAINT to establish paternity filed in the Norfolk Division of the Probate and Family Court Department on October 11, 2006.

The case was heard by *Randy J. Kaplan*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David M. Friedman* for the father.

*Brian J. Kelly* for the mother.

DUFFLY, J. We are asked to address whether, and in what amount, child support may be ordered with respect to parents who never married, but who share legal and physical custody of their child, enjoy comparable standards of living, and have incomes that exceed the levels to which the Massachusetts Child Support Guidelines (guidelines) presumptively apply. A judge in the Probate and Family Court ordered that the father pay the mother $454 in weekly child support, which had the effect of equalizing the parties' net incomes. In deciding whether it was within the judge's discretion to fashion a child support award based on an income-equalization formula, we must address two underlying questions: (1) in what circumstances child support may be ordered where the parents share physical custody; and (2) whether child support may be used to equalize incomes. We conclude that it was within the judge's discretion to award support on finding that the child's reasonable needs could not otherwise be met and that, although the guidelines in effect at the time of trial did not apply to shared physical custody arrangements, see Massachusetts Child Support Guidelines (effective Feb. 15, 2006) (2006 guidelines), the calculation of such support was required to be consistent with principles embodied in the guidelines.

Because we conclude that income equalization is inconsistent with principles that inform child support orders in the Commonwealth, and because the judge made no findings that the child's reasonable needs were not being met in the absence of an award of child support, the judgment must be vacated insofar as it orders the father to pay weekly child support to the mother. The portions of the judgment obligating the mother to pay certain child-related expenses must also be vacated, as they may be affected by the judge's further consideration whether, and in what amount, child support is appropriate.

1. *Background and prior proceedings.* The parties to this paternity action, who never married, lived together when their

daughter was born in December, 2004. They separated in June, 2006. In October, 2006, the mother filed a complaint in the Probate and Family Court seeking child support from the father, as well as retroactive payment of support and expenses. As part of the mother's pending action, the parties entered into a written stipulation in December, 2006, that established a joint legal and shared physical custody arrangement that continued until the time of trial.[1] Following a three-day trial in January and February, 2008, the judge issued findings and a judgment, which was later amended.

The judge ordered a continuation of joint legal custody and shared physical custody of the parties' three year old daughter, and a parenting schedule under which each parent would have substantially equal time with the child. The judgment also obligated the father to pay weekly child support of $454, an amount that, when deducted from what the judge found to be the father's net income and added to the mother's, effectively equalized their incomes. The judgment required that the mother continue to provide medical and dental insurance for the child if available through her employer and that she be responsible for the costs of the child's uninsured medical and dental expenses, child care, and extracurricular activities. The order provided also that the child was to attend public school in the school district in which the mother resides, and that if the mother wished the child to attend private school instead, she would bear the cost. The judgment also provided that if the father wished to send the child to private school but the mother did not, he would be solely responsible for the cost.

The parties filed cross appeals in the Appeals Court, which affirmed the judgment in an unpublished memorandum and order pursuant to its rule 1:28. See *M.C.* v. *T.K.*, 78 Mass. App. Ct. 1110 (2010). We granted the father's application for further appellate review.

The father claims that he should not have been ordered to

---

[1]In the written stipulation, the father acknowledged paternity, and the parties set forth a "co-parenting plan" that provided for essentially equally shared physical custody. The stipulation, which became part of a temporary order of the Probate and Family Court, required the father to pay $210 in weekly child support.

pay child support because he and the mother share physical custody equally, can provide the child with comparable homes, and are able to address her needs from their respective resources. He argues also that the judge erred in attributing income to him, and that the judge failed to make the requisite findings on which imputed income might have been based. He further asserts error in the denial of his request for attorney's fees incurred as a result of the mother's claim, made on the morning of trial, seeking sole legal and physical custody. The mother argues that provisions in the judgment requiring her to pay all child care costs, as well as all expenses related to the child's private school enrollment and extracurricular activities, are inconsistent with the judge's rationale and are inequitable. She also sought an award of attorney's fees for her defense of the father's appeal.

2. *Facts.* We summarize the judge's unchallenged findings of fact, derived from her written decision in support of the judgment. See *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987).[2]

The parties cohabited intermittently from February, 2002, until December, 2004. When not separated, they resided in the father's condominium unit in Boston, although the mother also owned a residence. The parties lived together continuously from the child's birth in December, 2004, until their final separation in June, 2006. At the time of trial, the mother, who was forty-three years old, worked as a physician earning approximately $150,000 per year and was negotiating a salary increase of approximately $10,000 to $15,000. The father, a retired stockbroker, was sixty-three years old and supported himself through "savings, dividends and interest."

The financial statement submitted by the father on February 18, 2008, listed gross weekly income of $444 derived from dividends and interest, and weekly expenses of $1,403, or $72,956 annually.[3] That statement reflected the total value of the father's assets as $1,331,621, exclusive of his condominium

---

[2] Where necessary to provide context or meaning, we have supplemented our summary with uncontested evidence, if it is apparent from the trial transcript that the judge credited it.

[3] The record includes eight financial statements, four filed by each party. Rule 401 of the Supplemental Rules of the Probate and Family Court, Mass. Ann. Laws Court Rules at 371 (LexisNexis 2011-2012) (rule 401) sets forth the requirements for such filings, which must be on a form created by the

unit and certain assets whose value he listed as "uncertain."[4] The condominium unit was assigned an assessed value of $1,647,660, with no mortgage, though that figure was noted to be "[u]nder [a]ppeal." Including the assessed value of the condominium, the value of the father's assets was $2,979,281. The statement identified no liabilities, other than an "uncertain" liability for attorney's fees.

Based on the father's bank records, the judge found the $1,403 in weekly expenses listed on his financial statement not reflective of his actual expenses, as he had also paid for, but not listed, items such as entertainment, vacations, clothing, dental work, upkeep of his yacht, repairs to his condominium unit, and funding of the child's college account. Based on these expenditures, the judge concluded that the father had "a minimum of $147,000 [in] net income" per year. In the absence of any evidence regarding his tax liabilities, the judge was apparently unable to ascertain an amount for the father's gross income.

On the basis of a financial statement submitted at the time of trial, the judge found that the mother had $46,022 in net assets consisting of equity in her home, an individual retirement account (IRA), bank accounts, jewelry, and home furnishings; she also had credit card debt of $52,000. The judge determined that, accounting for State and Federal tax withholding and deductions for health insurance premiums, the mother's net income was $99,744.32 per year.[5]

The judge determined that the guidelines, which create a "rebuttable presumption that [they] apply in all cases establish-

court. Rule 401 (c). In general, a party with an income less than $75,000 may submit a "short form" statement, while all other filers must complete the "long form," which requests detailed information about certain categories of assets not addressed on the short form. Rule 401 (a). The father filed four short forms at various stages of the proceedings, and the mother filed four long forms.

[4]The father's financial statement listed as among his assets with "uncertain" value the equity in his condominium unit, a fifty-five-foot boat, an interest in an "Oppenheimer claim," and an interest in his parents' estate.

[5]The judge made no findings regarding the mother's total weekly expenses or the amount of her child-related expenses. The mother testified that, where expenses were child related, she indicated as much on her financial statement. For example, $10,400 in annual clothing expense was listed as an expense for "self and child"; the mother testified that, of this amount, approximately $3,000 was attributable to clothing for the child. The financial statement reflected, also for "self and child," an annual expense of $3,536 for uninsured

ing or modifying a child support order," did not apply in the parties' circumstances, because their combined gross income exceeded $135,000. See 2006 guidelines, preamble, II.C. She decided that child support should be ordered "on the premise that each home will have an equal amount of income for the benefit of the child." Based on her findings that the father's net income was $147,000 per year and that the mother's was $99,744.32,[6] the judge arrived at an award of $454 in child support to be paid weekly by the father to the mother.[7]

3. *Discussion.* a. *Applicability of child support guidelines.* Public policy dictates that children be supported by the financial resources of their parents insofar as is possible. See G. L. c. 119, § 1. In the matter of child support, nonmarital children are "entitled to the same rights and protections of law as all other children." G. L. c. 209C, § 1. See *Department of Revenue* v. *G.W.A.*, 412 Mass. 435, 438-439 (1992). The Chief Justice of the Trial Court is authorized to promulgate guidelines establishing presumptive child support awards, based on articulated principles and calculated according to specified mathematical formulas.[8] See G. L. c. 209C, § 9 (*c*). See also 42 U.S.C. § 667 (2006) (requiring States to establish child support guidelines). Such guidelines are subject to periodic review and revision. See 45 C.F.R. § 302.56 (2011).

The Commonwealth's guidelines "were promulgated with several fundamental social policies in mind, including (1) to 'encourage joint parental responsibility for child support in proportion to, or as a percentage of income'; (2) to 'meet the child's survival needs in the first instance, but to the extent either parent enjoys a higher standard of living to entitle the child to enjoy that higher standard'; . . . and [(3)] to 'take into

medical and dental expenses, and $9,100 for vacations. The mother did not describe in her testimony any extracurricular activities in which she and the child engaged, nor did she specify on her financial statement any expenses for extracurricular activities incurred on behalf of the child.

[6]We discern no error in the judge's use of the parties' net incomes rather than their gross incomes, where those were the most reliable figures before her.

[7]The award reflects the difference in the parties' annual net incomes as found by the judge, equally distributed between them on a weekly basis.

[8]As of July 1, 2012, the title of Chief Justice for Administration and Management of the Trial Court changed to Chief Justice of the Trial Court. See G. L. c. 211B, §§ 1, 6, 6B.

account the non-monetary contributions of both the custodial and non-custodial parents.' " *Department of Revenue* v. *Mason M.*, 439 Mass. 665, 669-670 (2003) (*Mason M.*), quoting guidelines, preamble. The use of a mathematical formula was intended to "bring uniformity and consistency to the issuance of child support orders." Report of the Child Support Guidelines Task Force at 14 (Oct. 2008) (Task Force Report).

Although the guidelines have been subject to periodic revision since their enactment, an essential premise has remained constant: that child support should be calculated as a percentage of parental income, up to a maximum income amount, with that percentage varying based on level of income and number of children. See generally *Mason M.*, *supra*; Task Force Report, *supra* at 36-38. See also *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 677 (1998). That principle is expressed in the formulas that have been in effect since the guidelines were first promulgated.[9] A "basic" support amount, calculated as a percentage of parental income, is intended to reflect estimated expenditures on children. See Task Force Report, *supra* at 30. Where custody is not shared, the custodial parent's proportional share of support is deducted from the "basic" support amount, and the balance is the noncustodial parent's share, paid as child support to the custodial parent.[10]

The guidelines in effect at the time of trial were not applic-

---

[9]The Massachusetts Child Support Guidelines (guidelines) took effect on October 1, 1989. See *Canning* v. *Juskalian*, 33 Mass. App. Ct. 202, 204 (1992). The maximum income levels to which the guidelines are applicable have increased over the years. The guidelines in effect before February 15, 2002, did not apply where the gross income of the noncustodial parent exceeded $75,000, or where the parents' combined gross income exceeded $100,000. *Croak* v. *Bergeron*, 67 Mass. App. Ct. 750, 754 n.9 (2006). The guidelines in effect at the time of trial did not apply where the gross income of the noncustodial parent exceeded $100,000, or where the parents' combined gross income exceeded $135,000. Massachusetts Child Support Guidelines II.C (effective Feb. 15, 2006) (2006 guidelines). The guidelines currently in effect do not apply where the parents' combined gross income exceeds $250,000. Massachusetts Child Support Guidelines II.C (effective Jan. 1, 2009) (2009 guidelines).

[10]The percentages applied to different income levels have been adjusted since the guidelines were put in place, as has the manner in which a custodial parent's share of child support is calculated. Under the 2006 guidelines, for instance, the "basic" support amount for one child ranged from twenty-one to twenty-five per cent of the noncustodial parent's gross income. 2006 guidelines, *supra* at III.A. That amount was subject to downward adjustment based on the custodial parent's proportional share of support, calculated on the basis of that

able "[w]here the parties agree to shared physical custody or the court determines that shared physical custody is in the best interests of the children." 2006 guidelines, *supra* at II.D.1. Furthermore, the guidelines were "not meant to apply" where the parties' combined gross income exceeded $135,000. See *id.* at II.C. In such cases, however, the court was instructed to consider the award of support at the $135,000 combined income level as "a minimum presumptive level of support." *Id.*

i. *Discretion to award child support.* Where the parties' combined gross income exceeds the maximum level at which the guidelines are strictly applicable, a judge has discretion to adjust upward from the "minimum presumptive level of support," i.e., the award applicable at the maximum combined income level. *Adams* v. *Adams*, 459 Mass. 361, 393 (2011). *Mason M., supra* at 670. In making an adjustment to a presumptive award, a judge may consider factors not specifically accounted for in the guidelines. See, e.g., *Mason M., supra* at 671 (although guidelines were not strictly applicable to calculation of support order, judge "was correct to consider the fact that the father had a responsibility to support his marital children"); *Rosenberg* v. *Merida*, 428 Mass. 182, 187 (1998) (determining whether and how to apply credit for noncustodial parent's Social Security disability income dependency benefits where guidelines do not provide "a definitive answer").

The guidelines effective January 1, 2009 (2009 guidelines), clarify procedures that were left unclear or not addressed in earlier versions, including whether and how to calculate child support when the parties share physical custody. See Task Force Report, *supra* at 38. We conclude that, although the 2006 guidelines made no specific provision for the award of child support where parents share physical custody of a child, it was within the judge's discretion to award child support in a manner

parent's gross income in excess of $20,000 after deducting child care expenses. See *id.* at III.C.

Under the 2009 guidelines, *supra* at II, the "basic" support amount for one child is calculated as a percentage of the parents' combined "available income," an amount determined by deducting from gross income such expenses as taxes, health insurance premiums, and day care costs. Each parent's share of the "basic" support amount is proportional to that person's contribution to the combined available income. See *id.*, worksheet.

consistent with the principles that have animated the guidelines since their inception. See, e.g., *J.S.* v. *C.C.*, 454 Mass. 652, 661 (2009).

ii. *Application of child support principles.* Of particular relevance to the issues before us are the principles that responsibility for child support should be calculated "in proportion to, or as a percentage of," income, and that, where one parent has a higher standard of living, a child is entitled to enjoy that higher standard. 2006 guidelines, preamble. See *id.* at II.D.2 (judge may adjust child support amount "after taking into consideration the parties' actual time sharing with the children and the relative resources, expenses, and living standards of the two households"). See also *Smith* v. *Edelman*, 68 Mass. App. Ct. 549, 554 (2007) (judge may consider "material disparity in the standard of living in the respective parents' households" in fashioning award of child support); *Brooks* v. *Piela*, 61 Mass. App. Ct. 731, 737 (2004) (children's needs defined in part by parents' standard of living).[11]

Nothing in the guidelines or in our decisional law, however, espouses the view that child support should be used to equalize living standards in the parental households through a mechanistic equalization of the parties' incomes. See, e.g., *Pearson* v. *Pearson*, 52 Mass. App. Ct. 156, 160-161 (2001) (rejecting "pure income-sharing approach"). Cf. *Smith* v. *Edelman*, *supra* (goal

---

[11]A party's standard of living is distinct from, although related to, his or her net worth. Parties might enjoy comparable standards of living notwithstanding a substantial disparity in the net value of their assets. See, e.g., *Croak* v. *Bergeron*, 67 Mass. App. Ct. 750, 757 (2006) (judge found that father had ability to "live on" his assets and was not precluded from considering "the entire amount of those 'assets' [not merely the income the assets could generate] in determining whether to modify [father's] child support obligation").

As reflected in the Report of the Child Support Guidelines Task Force (Oct. 2008) (Task Force Report), standard of living, as the concept is used in the guidelines, may be closely linked to household spending. The Task Force Report considered two approaches used by economists to measure a household's standard of living. One method examines the proportion of a household's expenditures devoted to food, while the other looks at the value of expenditures on items used only by adults, such as "adult clothing." *Id.* at 20-21. The task force elected not to rely on any one economic model or approach. Its recommendations instead reflect broad principles, including "the importance of an economically sound household to a child" and that "the percentage of income devoted to children's needs levels off or declines at higher income amounts." *Id.* at 24.

of maintaining standard of living of family as though it had remained intact has limits; increase in child support based solely on increase in income of noncustodial spouse "may have the effect of constructively distributing the noncustodial parent's estate, and is accordingly disfavored"). Rather, the formulas set forth in the guidelines allow a child to benefit from one parent's higher income and avoid a "gross disparity" of standard of living, while eschewing equalization. See 2006 guidelines, preamble. See also 2009 guidelines, *supra* at IV; Task Force Report, *supra* at 20-24.[12]

The principles set forth in the guidelines are consistent with the American Law Institute's Principles of Family Dissolution: Analysis and Recommendations § 3 (2002) (ALI Principles).[13] The ALI Principles posit that attempts to equalize income between the higher-income and lower-income parent would invade the higher-income parent's reasonable interest in benefiting from the fruits of his or her labor, because such attempts would "impose all the economic costs of family dissolution on the [higher-income] parent," while holding the parent with lower income harmless from such costs. *Id.* at § 3.04 comment c. Thus, one of the "objectives subsumed in the goal of fairness to the nonresidential parent" is that "he [or she] in no event be required to fully share his [or her] earnings . . . for the purpose of equalizing household standards of living." *Id.* at § 3.04 comment k.

---

[12]The principle that child support should be used to equalize living standards in parental households has not been adopted in any State. See Ellman, The Theory of Child Support, 45 Harv. J. on Legis. 107, 146 (2008) (rules requiring awards that establish equal living standards in custodial and noncustodial households have not been adopted, due at least in part to "opposition to equalizing the living standard of the two parents under the child support rubric"); Starnes, Lovers, Parents, and Partners: Disentangling Spousal and Co-Parenting Commitments, 54 Ariz. L. Rev. 197, 219 (2012) ("no state has adopted" principle that "child support should aim to equalize the living standards in the two parental households").

[13]The American Law Institute's child support principles and guidelines were drawn from the Massachusetts child support model. See American Law Institute, Principles of Family Dissolution: Analysis and Recommendations, introduction, at 21 n.28 (2002) (ALI Principles). See also *id.* at § 3.05, Reporter's Notes to comment b. The task force charged by the Chief Justice for Administration and Management with reviewing the Massachusetts guidelines, which had the benefit of the analysis and recommendations of the ALI Principles, did not recommend an income-equalization approach.

Concerns about the effects of income equalization will be greater still where parents have similar standards of living and share physical custody. Child support is awarded in "traditional custody and visitation arrangements," 2006 guidelines, *supra* at II.D.1, in order, among other things, to compensate the custodial parent for economic disadvantages associated with primary child care responsibility. See ALI Principles, supra at § 3.04 comments e & i. In a shared custody arrangement, the added expenses of living with a child (e.g., food, clothing, and third-party child care) and the opportunity costs of being a residential parent (e.g., diminished chances to attain work experience and market skills) will have a similar impact on both parents. "The principle that a parent should share income with a child seeks to ensure that the child enjoys economic adequacy and a standard of living not grossly inferior to that of either parent, and that the child is not deprived of important life opportunities that would have been available had the child resided with that parent. When the amount of child support generated by application of the formula is sufficient to accomplish all these objectives, the rationale for continued sharing of income loses much of its force . . . ." *Id.* at § 3.07 comment c.

The judge's income-equalization formula, which was intended to "place both parties in an equal financial situation regarding their net income" and give to each home "an equal amount of income for the benefit of the child," is inconsistent with principles reflected in the guidelines and our decisional law, and should not have been employed.

iii. *Whether child support was warranted.* We next consider whether, based on the judge's findings and the evidence, some award of child support was warranted. The judge did not find that the child's reasonable support needs could not be met in the absence of an award of support. Nor did the judge find that the parties enjoyed such a "gross disparity" in standards of living as would have had an impact on the child's reasonable needs and expenses in the mother's household. See 2006 guidelines, preamble. Indeed, the judge specifically found that, "[s]ince the child's birth, she has had the benefit of spending a near equal amount of time with each of her parents. This has

resulted in the child having essentially two homes where she has clothing, shoes, toys, strollers, furniture and toiletries." The judge appears to have credited the father's statement, which the judge quotes, that the parties "incur substantially the same costs for the child while she is in their care and custody."

Moreover, the undisputed evidence shows that both parties enjoyed frequent vacations and travel with the child, owned or leased expensive vehicles, and otherwise exhibited the indicia of upper-middle class living. The father testified without contradiction that, when the child was in his household, he paid for "everything that is important to her well-being and development from clothing and toiletries and potty training to vacations, to swimming lessons, to yoga lessons, to music lessons, to museum memberships, to a school facility" that she attended on rainy days. The mother's financial statements and testimony similarly reflect that she incurred expenses for the purchase of expensive clothing for herself and the child, and for vacations with the child in places such as the Grand Cayman Islands and Marco Island in Florida.

Because the judge made no finding that the mother was unable to provide for the child's reasonable needs while the child was in her care, in a manner consistent with a standard of living appropriate to a parent earning at least $150,000 per year, and because the evidence does not support an implied finding that the standard of living the child experienced at her mother's home was grossly inferior to that which she enjoyed while with her father, the child support award did not have a factual basis. Cf. *Smith* v. *Edelman*, 68 Mass. App. Ct. 549, 555 (2007) (denial of request for increased child support upheld despite substantial increase in father's income, where trial judge found that increased income did not result in material disparity in parties' living standards).

*iv. Costs mother was ordered to pay.* The mother appeals from so much of the judgment requiring her to pay the costs of child care, extracurricular activities, and private school enrollment. It is unclear, from either the judge's rationale or the evidence, whether the judgment was intended to obligate the mother to pay only for the costs of child care and extracurricular activities incurred when the child was with her, or also for such

expenses incurred by the father.[14] The judge made no finding with respect to whether private school attendance was in the best interest of the child and a reasonable expense in light of the parties' incomes.

We note that the 2009 guidelines, *supra*, specifically address many of the issues raised by the parties in their cross appeals: the guidelines formula is made applicable where parties share physical custody and have a combined income that does not exceed $250,000,[15] *id.* at II.C; each parent's reasonable child care costs may be deducted from gross income before calculation of the child support order, *id.* at II.E; the reasonable cost of individual or family health insurance actually paid by a party may be deducted from gross income, *id.* at II.G; and if a judge determines that there are "child-related expenses such as extracurricular activities[ or] private school . . . which are in the best interest of the child and which are affordable by the parties, the [judge] may allocate costs to the parties on a case-by-case basis," *id.* at II.K. See Task Force Report, *supra* at 44.

Therefore, insofar as it orders the father to pay child support

---

[14]Based on the father's uncontradicted testimony, he incurred expenses for numerous extracurricular activities that he enjoyed with the child, with no expectation of a contribution from the mother. In contrast, there was no evidence of the nature and amount of any expenses incurred by the mother for extracurricular activities. See note 5, *supra*.

[15]The 2009 guidelines, *supra* at II.C, provide that, in cases where gross income exceeds $250,000, "the Court should consider the award of support at the $250,000 level as the minimum presumptive order," which the court may adjust upward in its discretion. Where the parents share physical custody, "child support shall be determined by calculating the child support guidelines twice, first with one parent as the Recipient, and second with the other parent as the Recipient. The difference in the calculations shall be paid to the parent with the lower weekly support amount." *Id.* at II.D.

The worksheet included in the 2009 guidelines provides the formula for calculating the support amount on the parties' gross weekly income. By way of illustration, applying the formula to the parties' combined net incomes, as found by the judge, after adjusting for the father's costs of his health insurance and the mother's child care costs, the father's share of the child's support to be paid to the mother would be $187 weekly.

The gross weekly income figures are based on the father's net annual income as found by the judge divided by fifty-two, less his health insurance costs of $150; and the mother's net annual income as found by the judge (which already took into account her insurance costs), less her personal child care costs of $200 (the father had no such expense).

and the mother to pay for child care and the costs of the child's extracurricular expenses and private school attendance, the judgment must be vacated and the case remanded for further findings and a determination as to the amount of child support due to the mother from the father, if any, by application of the version of the guidelines in effect at the time of such determination. On remand, the judge is not required to revisit the issue of the father's income at the time of trial, but should consider whether the circumstances have materially changed since the date of the judgment before us, and should base any award of child support on the parties' current incomes. The judge should adjust the parties' incomes to reflect their respective expenses for health insurance and child care; the judge should also consider whether there are other circumstances that, according to the guidelines, warrant deviation from a strict application of the applicable formula. In addition, the judge should determine whether current extracurricular activities and private school are affordable and in the best interests of the child, and allocate responsibility for such costs in accordance with considerations set forth in the guidelines and the child support principles outlined in this opinion.

b. *Imputation of income to the father.* The father argues that the judge erred in attributing income to him because he is not voluntarily underemployed but, rather, is retired, and further that she failed to make the required "specific and detailed findings" supporting an attribution of income to him. There was no error.

The judge found that the father's weekly expenses were considerably higher than the $1,403 reflected on his financial statement submitted at the time of trial. Based principally on the father's own trial testimony, the judge found that the father had failed to itemize a number of significant expenses, including any related to the child. To determine the father's actual weekly expenses, the judge examined his savings account, from which she extrapolated his after-tax spending, and found that it amounted to $147,000 in 2005 and $193,000 in 2006. In the absence of "any evidence" of the father's expenses for 2007, the court imputed to him "a minimum of $147,000 [in] net income based on the evidence presented at trial as to his spending

in 2005." The judge did not credit the father's testimony that he was required to dissipate assets in order to pay nonrecurring as well as recurring expenses. Indeed, based on four financial statements that covered the period from 2006 to 2008, the judge found that the father's assets had increased in net value during that period, from $2,342,000 to $2,979,281.

We reject the father's argument, unsupported by citation to any authority, that in order to attribute income to him, the judge was required to make specific findings that his retirement was voluntary and in bad faith, or that the child's needs were such as to require consideration of the father's ability to earn additional income. The evidence reflects that the father retired after receiving a substantial settlement from his former employer and that he has no pension or retirement accounts, instead paying for his ordinary living expenses by drawing on a savings account set up for that purpose.

"The guidelines and our case law leave the definition of income flexible, and the judge's discretion in its determination broad." *Casey* v. *Casey*, 79 Mass. App. Ct. 623, 634 (2011), citing *Whelan* v. *Whelan*, 74 Mass. App. Ct. 616, 625 (2009). The imputation of income is appropriate where a party has made vague, misleading, or untruthful entries on a financial statement. See, e.g., *Salten* v. *Ackerman*, 64 Mass. App. Ct. 868, 872-873 (2005); *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 678-679 (1998). Because the father failed to provide the judge with evidence from which she might have arrived at a different figure, and because we have not been provided with the documents that were before the judge, we are not in a position to second-guess the judge's findings on this score.[16] The judge's credibility find-

---

[16] The father appealed from an August 13, 2007, order of the Probate and Family Court (not included in the record) that he produce three years of State and Federal tax returns. A single justice of the Appeals Court vacated the order on the grounds that State tax returns are "absolutely confidential," and that the defendant did not possess Federal income tax returns, not having completed or filed them. That ruling is not before us, and no issue has been raised on appeal regarding the production of State income tax returns by the parties, where the parties' income and expenses are at issue. In the absence of tax returns, the judge appropriately could draw inferences adverse to the father and impute net income based on evidence in the record. Cf. *Custody of Two Minors*, 396 Mass. 610, 616 (1986).

ings and the bases for her attribution of income are well supported by the record. See *id.* at 676-677.

The father does not argue that he was prevented from presenting evidence to support his claim that he was required to dissipate assets in order to meet both his extraordinary, nonrecurring expenses, and his routine, recurring expenses; nor does he argue that the judge's findings as to the amount he annually expends on recurring, ordinary living expenses do not have a basis in the record. In light of the evidence that the father incurred ordinary living expenses not listed on his financial statement, that such expenses exceeded funds available to him from income reported on his financial statement, and that he routinely accessed a separate savings account to pay these living expenses, it was appropriate for the judge to impute an annual net income from the bank statements in the record. See, e.g., *Kane* v. *Kane*, 13 Mass. App. Ct. 557, 559 (1982) (no error in master's findings imputing income to husband in divorce proceedings where findings are "supported in part by careful consideration of available records and an analysis of several of the husband's financial transactions"). Cf. *Crowe* v. *Fong*, *supra* at 679 (in light of "complete lack of documentary evidence to substantiate [father's] claimed expenditures," judge would be justified in treating proceeds from liquidation of business interests as available to him to generate interest income for purposes of calculating support obligation).

The father's testimony establishes that he relied on his savings account to pay his living expenses; that he had budgeted so that he could continue to pay his expenses from the account he had set up for that purpose without depleting his assets; and that his source of income was, in essence, an annuity that he had established and was administering on his own behalf.[17] In the circumstances of this case, the judge did not abuse her discretion in looking to assets to determine the amount of the support award.

---

[17]At trial, the father was asked by his attorney to explain how he met his living expenses. He testified, "I write a check" for "[w]hatever amount is necessary to pay the bill." He said he "[t]ypically" withdrew funds not from the investment account, but from savings. The father testified on cross-examination that, because he is retired, he uses his savings account to pay all of his expenses.

c. *Attorney's fees.* The father claims error in the judge's failure to award him attorney's fees, which he asserts should have been ordered because the mother engaged in frivolous discovery and frivolous litigation. The father points particularly to the mother's demand for sole legal and physical custody and increased child support payments on the first day of trial, resulting in a motion for a continuance and additional preparation by the father's counsel.

The judge denied the father's request for attorney's fees,[18] noting that he had caused "unnecessary complications" by failing to respond to the mother's discovery requests and provoking two motions to compel, as well as by his evasiveness regarding his expenses. The award of attorney's fees rests in the judge's sound discretion. *DeMatteo* v. *DeMatteo*, 436 Mass. 18, 38-39 (2002). The judge's reasons for denying the father's request for attorney's fees are supported by the record.

4. *Conclusion.* To the extent that it orders the father to pay child support and the mother to bear the full costs of the child's extracurricular activities, child care, and private school, the judgment of the Probate and Family Court is vacated. The case is remanded for entry of an order staying the payment of child support to the mother, and for a determination, after a hearing, whether payment of child support is appropriate and, if so, in what amount. The denial of the father's request for attorney's fees is affirmed.

*So ordered.*

---

[18]The judge also denied the mother's request for attorney's fees; the mother has not appealed from that denial.