The father appeals from a judgment ordering child support in the amount of $2,320 per week. The judgment was entered after a trial by representation in which the parties submitted written stipulations of fact, and also stipulated that the trial judge could take judicial notice of their financial statements. The only issues for trial were the amount of child support to be paid by the father and whether he should pay any portion of the wife's legal fees and costs.[2] On appeal, the father does not challenge any subsidiary findings as clearly erroneous. Instead, he argues in essence that the child support award is excessive in that it is not limited to the child's needs and accordingly in effect amounts to alimony or property division in disguise. Although we acknowledge that the award is high, it is supported by the judge's careful findings, was within the confines of our precedent, and we perceive no abuse of discretion. We accordingly affirm.
The facts are essentially undisputed, and we summarize them as follows. The unmarried parents have one child, who was born in July, 2013. The parents' relationship ended in October, 2014, and the mother returned to live with her parents in New Hampshire, where she and the child continued to live until the time of trial.[3] The parents agreed to the removal of the child to New Hampshire, to the mother's primary physical custody of the child, and to a parenting schedule that results in the father having the child approximately one-third of the time (although this schedule is flexible given the father's work commitments). Given the fact that the parties agreed that the mother would not move beyond a certain distance from the father's residence, the judge found that the parties accepted that the mother may move from her parents' house in the future. The mother has been, and was at the time of trial, employed in a medical-related field and the judge imputed a gross annual income (base salary and bonus) to her of $118,000 ($2,269 per week). The mother's weekly needs, as stated on her financial report, are approximately $1,900 per week and include housing, child care, and medical, dental and vision insurance. The mother has gross assets valued at $182,000.
The father's gross assets are valued at approximately $10.5 million, and he has a gross weekly income of $22,237. His weekly income net of income taxes, FICA, and Medicare is approximately $15,101. He lives in a condominium at the Four Seasons in Boston.[4] The father's weekly needs, as reflected on his financial statement are approximately $10,485, including medical insurance for himself and the child, long term disability insurance, parking, and 403B retirement contributions, but excluding child support. The judge found that the father's standard of living is substantially higher than the standard at which the child has been living since the termination of his parents' relationship.
At the time of trial, the child was three years old and attended a private preschool costing $7,200 per year, to which the father did not directly contribute.[5] The parties reached an agreement in which they deferred decision on how the child's college expenses would be covered. As to more immediate expenses, the parties provided that they would share equally in extracurricular and activities expenses, provided they agree on them. If they do not agree, the party who wants the child to participate in the activity is to be responsible for all of the costs.
The judge calculated that, pursuant to the 2013 child support guidelines and based on the first $250,000 of the parties' combined income, child support would be $703 per week. At trial, the father sought a child support order of $800-the amount he had been paying under a temporary order. The mother, by contrast, sought an amount between $2,652 and $4,206 per week. As we noted at the outset, the judge ordered the father to pay $2,320 per week. We review the judge's decision regarding child support for abuse of discretion. Boulter-Hedley v. Boulter, 429 Mass. 808, 811 (1999). "Where[, as here,] the parties' combined gross income exceeds the maximum level at which the guidelines are strictly applicable, a judge has discretion to adjust upward from the 'minimum presumptive level of support.' " M.C. v. T.K., 463 Mass. 226, 233 (2012), quoting from Adams v. Adams, 459 Mass. 361, 393 (2011). See Guidelines § II-C (no presumptive application when combined annual gross income of parties is greater than $250,000).
The father first argues that the judge abused her discretion because the award was excessive and unrelated to the child's reasonable needs. The father's argument is based on a very narrow definition of need, which he hinges on the fact that the mother's financial statement showed a positive difference between her income and her expenses. The judge was not confined to looking at this so-called surplus in evaluating the child's needs. To the contrary, the judge's charge, even when applying the guidelines, is to consider and evaluate the totality of the circumstances in determining the parties' support obligation. Croak v. Bergeron, 67 Mass. App. Ct. 750, 755 (2006). To this end, the guidelines specifically permit deviation from the presumptive amount where any number of certain circumstances exist. One such circumstance of particular importance to this case is where "application of the guidelines would result in a gross disparity in the standard of living between the two households such that one household is left with an unreasonably low percentage of the combined available income." Guidelines § IV. While child support cannot "be used to equalize living standards in the parental households,"[6] the guidelines "allow a child to benefit from one parent's higher income and avoid a 'gross disparity' of standard of living." M.C., 463 Mass. at 234-235. Thus, the judge did not err in considering the parties' disparate means to determine the child's needs. "[C]hildren's needs are to be defined, at least in part, by their parents' standard of living and that children are entitled to participate in the noncustodial parent's higher standard of living when available resources permit." Brooks v. Piela, 61 Mass. App. Ct. 731, 737 (2004). As the judge found, the father "has the financial resources to provide experiences for [the child] that [the m]other has no practical hope of providing for him, even in part." And she could exercise her discretion to attempt to bridge this gap in opportunity between the parents.
Other factors were also properly considered by the judge. For example, the judge noted that the terms of the parties' agreement allocate a disproportionate (as measured against income) percentage of the child's expenses to the mother and, moreover, make any contribution from the father voluntary since he has agreed to share only in expenses of which he approves. Thus, the judge found force in the mother's argument that the father's only obligation is child support, a matter she could consider in setting the amount of the award. See Leonardo v. Leonardo, 40 Mass. App. Ct. 572, 577 (1996).
Moreover, in evaluating the "surplus" reflected on the mother's financial statement the judge could properly consider that the parties anticipated that the mother would move from her parents' home, where her living and child care expenses were deflated. The judge could take into account a reasonably anticipatable future expense or change in living circumstances such as this when setting the award.
For all of these reasons, we conclude that the judge was within her discretion in setting the amount of child support, although we acknowledge that the amount was high. For essentially the same reasons, the father's secondary argument (that the child support award was in effect a form of disguised alimony or property division) also fails. Although a child support award should not "provide a windfall to the child and custodial spouse," Pearson v. Pearson, 52 Mass. App. Ct. 156, 160 (2001), because the child support award was based on the child's needs, the order is neither disguised alimony nor property division.[7]
Judgment affirmed.

Before trial, the parties had reached an agreement as to all other issues, including custody.

The mother's parents helped to provide child care.

He also owned an additional residence in which the parties lived, but that he no longer owns.

If the parties are unable to agree on a private school in the future, he is to attend public school where the mother lives.

There is no suggestion that the judge was engaged in income equalization here.

Each party's request for appellate fees and costs is denied.