NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1262

JOHN THOMAS O'DONNELL

vs.

KYLEE CHRISTINE GRANFIELD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This is a case about child support.  The father appeals from an "Amended Judgment of Modification," and raises three principal arguments:  (1) that the judge erred in ordering the father to pay one-half of his eleven year old daughter's private school expenses, (2) that the judge erred in ordering the father to pay one-half of the daughter's extracurricular expenses, for activities such as ice hockey, lacrosse and summer camps, and (3) that the judge did not properly calculate the father's gross income and thus the ordered child support payment of $712 per week was improperly inflated.  Finding no merit in the father's arguments, we affirm.

Background.  The father and the mother were never married and this proceeding concerns their one child.  The father is the owner and operator of a business, O'Donnell Paving and Landscaping (OP & L).  A central question at trial was determining the father's gross income from the business.  The mother presented evidence of the father's actual income through an accounting expert; the father through his business accountant.  As the judge put it:

> Father is the sole owner of OP & L.  Given this, he is able to manage the finances of the business in any way he chooses; and he does.  The business pays myriad personal expenses for father and other family members, even for family pets.  It would be an impossible task for this Court to quantify with certainty the expenses paid by the business that are not 'ordinary and necessary expenses required to produce income,' but they are quite substantial and significantly reduce father's taxable income related to the business.

The judge concluded that the father's actual gross income from OP & L was $279,202 per year, and that applying the child support guidelines (and accounting for the mother's yearly income), the father was to pay $712 per week.  The judge also ordered the father to pay one-half of the daughter's private school expenses.  The judge noted that the mother has sole legal custody, and reasoned that "[t]he Court is satisfied that [the] mother had good reasons to enroll [the child] in private school; and it appears that the child is thriving in that academic setting."  The judge reached a similar conclusion in ordering

2

the father to pay one-half of the daughter's extracurricular activities:  "[w]here [the] father is able to pay for 'extras' for himself, his older daughter and other members of his family through the cash flow generated by his business, he has the ability to do the same for [the child]."

1.  Discussion.  The order to pay for private school.  The father first challenges the order that he pay one-half of the child's private school expenses, claiming that the judge is not authorized by the applicable statute, G. L. c. 209C, § 9, to order a parent "to pay secondary school tuition."  That contention is simply incorrect.  The statute states that in determining child support, the judge "shall apply the child support guidelines promulgated by the chief justice of the trial court."  G. L. c. 209C § 9.  Those guidelines, in turn, state that "in cases where the Court makes a determination that there are additional child-related expenses such as . . . private school . . . which are in the best interest of the child and which are affordable by the parties, the Court may allocate costs to the parties on a case-by-case basis."  Child Support Guidelines § II(M) (Oct. 2021).  See M.C. v. T.K., 463 Mass. 226, 237-239 (2012) (remanding for determination of whether, as per guidelines, private school expenses were affordable by parties and in best interests of child).

3

During oral argument, the father's counsel suggested a different argument, which was that the guidelines themselves, insofar as they authorized payment for private secondary school, exceeded the authority granted to the drafters of those guidelines. The father's counsel did not point us to any relevant authority on the issue, however, and more importantly, the argument was made for the first time on appeal. We will not upset a trial judge's order based upon an argument that was not made to her. See Commonwealth v. Bettencourt, 447 Mass. 631, 633 (2006).

As the order to pay for private secondary school education was authorized, we review it for abuse of discretion. See Bobblis v. Costa, 94 Mass. App. Ct. 264, 266 (2018); Wasson v. Wasson, 81 Mass. App. Ct. 574, 576 (2012). We discern no abuse of discretion here. While we think an order requiring a parent to pay for private secondary school education requires a showing of appropriate circumstances, the judge expressly found that "good reasons" existed here, and such was borne out by the evidence at trial. The child has some learning impediments and had been struggling in public school; she was doing much better in the private school due to the flexibility of the private school teaching environment. Finally, we note that the judge ordered the parents to split the costs of the school, thereby

4

ensuring that the mother would bear a significant financial burden and would not make the choice lightly.

2. Extracurricular activity costs.  The father also challenges the order that he pay one-half of the child's extracurricular activity costs, including sports teams in ice hockey and lacrosse, and summer camps.  The father appears to be arguing that the costs are simply too high -- that the child does not need to do all of the activities.  For reasons similar to those noted above, we are not persuaded.  As the judge put it:  "father deferred to mother's judgment when he agreed to give her sole legal custody, and mother decided that [the child] would benefit from these activities, as well as summer camps.  By all accounts . . . [the child] is flourishing generally while maintaining the activities schedule established for her by mother."

3. The child support payment.  Finally, the father challenges the judge's child support order because, he claims, the judge miscalculated his gross income.  We understand this argument to be that the judge's findings were clearly erroneous, meaning that there was either no evidence to support them, or that despite supporting evidence, "'the reviewing court . . . [must be] left with the definite and firm conviction that a mistake has been committed.'"  Bldg. Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977), quoting United States v.

United States Gypsum Co., 333 U.S. 364, 395 (1948).  Again, we are not persuaded.

The judge found as fact that the father's income was comprised of two components -- a salary of $102,00 per year, and the ordinary business income of OP & L, which was attributable to father as the sole owner.  As to the latter amount, the judge first averaged the past three years as reported on OP & L's tax returns, arriving at an average business income of $145,303 per year.  However, the judge noted that OP & L took many deductions against its ordinary business income that were not appropriate, because they were not "ordinary and necessary expenses required to produce income."  These deductions artificially reduced the father's gross income for child support purposes.  Stating that it was an "impossible task" to quantify all such improper expenses, the judge chose to add back to OP & L's income only two such items -- (1) the expenses for the father's Maserati (one of seven vehicles expensed through the business), and (2) depreciation expenses.  The adjustments resulted in an annual income of $279,202 per year ($102,000 plus $145,303 plus $31,899).

The father objects to this figure, but his arguments are without merit.  At one point the father states, somewhat incredibly, that the correct figure is just the $102,000 salary; at another he suggests that it should be $266,318, rather than

6

$279,202. The only concrete argument he makes is that OP & L's income for 2020 included a one-time COVID Paycheck Protection Program Forgiven Loan (PPP) of $92,000; he argues that the judge erred by not excluding the PPP payment, and that the judge's figure thus was inflated by one-third of that amount, or approximately $30,000. We are not convinced that it was error to include the PPP payment in the father's gross income, as it was money actually received, but in any event, it is clear that the judge took a conservative approach in calculating the father's ordinary income, as there were several other questionable expenses that the judge chose not to add back. We

discern no abuse of discretion.[1,2]

Amended judgment of
  modification dated February
  22, 2022, affirmed.

By the Court (Wolohojian,[3]
  Englander & Brennan, JJ.[4]),

Assistant Clerk

Entered:  May 29, 2024.

---

[1] The mother requests appellate attorney's fees in her brief.  However, she does not cite any authority as the basis for her request.  Accordingly, in the exercise of our discretion the request is denied.

[2] The father also claims that error arose because the mother's (former) live-in boyfriend did not respond to a trial subpoena, and did not testify.  The father presents no evidence that the mother procured this absence, but in any event, the father made no offer of proof as to what he expected the boyfriend to say, and thus made no showing of prejudice.  Again, there was no error.  To the extent the father makes additional arguments, "they 'have not been overlooked.  We find nothing in them that requires discussion.'"  Commonwealth v. Sosa, 493 Mass. 104, 124 n.12 (2023), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[3] Justice Wolohojian participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

[4] The panelists are listed in order of seniority.