APPEALS COURT 
 
 JUSTIN SMITH vs. MONIQUE SMITH[1]

 
 Docket:
 23-P-830
 
 
 Dates:
 October 4, 2024 – May 6, 2025
 
 
 Present:
 Sacks, Shin, & Hershfang, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 Divorce and Separation, Modification of judgment, Child support, Alimony, Findings. Parent and Child, Child support. Taxation. Statute, Construction. Probate Court, Judicial discretion.
 
 

             Complaint for divorce filed in the Norfolk Division of the Probate and Family Court Department on November 17, 2017. 
            A complaint for modification, filed on June 1, 2020, was heard by Kimberly Moses, J. 
            Maureen McBrien (Alexander D. Jones also present) for the husband.
            Marc E. Fitzgerald (Viktor A. Theiss also present) for the wife.
            SACKS, J.  Justin Smith (husband), the former spouse of Monique Armstrong (wife), appeals from a modification judgment dated May 31, 2023 (nunc pro tunc to October 4, 2022).  He challenges the judge's decision to substantially increase his alimony and child support obligations after applying the three-step framework set forth in Cavanagh v. Cavanagh, 490 Mass. 398, 410 (2022).  We affirm.
            Background.  We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion.  See Cavanagh, 490 Mass. at 399.  
            The parties were married in August 2000; two children were born of the marriage (in December 2004 and February 2008, respectively).  The husband was the "primary financial contributor" during the marriage, working for an investment firm as managing director.  As a condition of his employment, the husband was required to invest in various partnership funds through capital calls; the parties invested in two such funds during the marriage (Funds IV and V).  In the early years of the marriage, the wife also worked, earning more than $300,000 annually.  However, she left the workforce following the birth of the eldest child and was a stay-at-home parent from 2005 to 2016.  On reentering the workforce after more than a decade-long absence, the wife's earning capacity had declined by more than sixty percent (from $300,000 to $112,000).
            The husband initiated divorce proceedings in November 2017, and judgment of divorce nisi (divorce judgment) issued in July 2018, incorporating the parties' separation agreement (agreement).  The agreement, the relevant provisions of which merged with the divorce judgment, provided that (1) the wife would have primary physical custody of the children, with the husband caring for them approximately one-third of the time beginning in 2019; and (2) the husband would pay child support of approximately $600 per week ($2,600 per month), general term alimony of approximately $400 per week ($1,733.33 per month), and "additional alimony" of $18,000 per year (on receiving his "year-end bonus income").  The agreement specified that the husband's alimony payments would be treated as taxable income to the wife and deductible by the husband for income tax purposes.  The agreement further provided that, for purposes of any future modification of the husband's alimony obligation, all of his income derived from investments and inherited assets would be excluded from consideration.  Finally, with respect to the partnership fund investments, the parties agreed to share equally in the net profit distributions related to their investment in Fund IV, and the husband would receive all distributions related to Fund V.
            Following the divorce, the husband acquired additional income-producing property interests.  He invested in another partnership fund through his employer (Fund VI), from which he received distributions totaling $87,938 in 2021.  The husband also acquired, through a gift from his father in or around late 2020, a fifty percent interest in a limited liability company (LLC) called Caidlyn, which owns income-producing farmland and from which he received distributions of $575,000 in 2021, and $325,000 in 2022.[2]
            In 2020, the husband filed a complaint for modification, seeking changes to the parenting schedule.  The wife thereafter filed a counterclaim seeking an upward modification of alimony and child support on the asserted bases that, since the divorce, the husband's income had increased and he had been providing significantly less than one-third of the children's care.
            A two-day trial was held in 2022; both parties and the wife's tax expert testified.  In 2023, the judge issued the modification judgment, accompanied by thirty-four single-spaced pages of findings.  The judge found that the following material changes in circumstances had occurred since the divorce, warranting modification of the husband's support obligations:  (1) the husband's income had "increased dramatically," largely as a result of the distributions he received from Caidlyn and Fund VI; and (2) the husband was providing "substantially less than one-third" of the children's care (as of the modification trial, he had not had any parenting time in over one year).[3]  After applying the three-step framework set forth in Cavanagh, 490 Mass. at 410, the judge increased the husband's support obligations, ordering him to pay alimony of $1,100 per week ($4,766.67 per month) and child support of $1,400 per week ($6,066.67 per month) prospectively, along with retroactive alimony and child support totaling approximately $180,000.[4]  The husband's obligation to pay additional alimony of $18,000 on receipt of his annual bonus was terminated, with the judge explaining that the husband's bonus income had already been considered in setting his modified weekly alimony obligation.  The present appeal by the husband followed. 
            Discussion.  "'[T]he method for calculating and modifying child support' is governed both by statute, see G. L. c. 208, § 28, and by the . . . Child Support Guidelines" (guidelines), while "actions to . . . modify alimony are governed by the Alimony Reform Act" (act), G. L. c. 208, §§ 48-55.  Emery v. Sturtevant, 91 Mass. App. Ct. 502, 507 (2017), quoting Morales v. Morales, 464 Mass. 507, 509-510 (2013).  We review a judge's decision on a request to modify alimony and child support for an abuse of discretion, see Emery, supra, and the judge's underlying findings of fact for clear error, see Whelan v. Whelan, 74 Mass. App. Ct. 616, 619 (2009).
            The husband contends that the trial judge erred when (1) applying the three-step Cavanagh framework, by (a) failing to explain the basis for the alimony figures used in step one and (b) declining to consider the tax consequences when determining the equitable order in step three; (2) modifying alimony by changing the structure of alimony paid from the husband's bonuses; and (3) increasing child support above the minimum presumptive guidelines amount without making adequate findings demonstrating the children's need for additional support.  Addressing the husband's contentions in turn, we conclude that none of them is persuasive.
            1.  Cavanagh framework.  In Cavanagh, 490 Mass. at 410, the Supreme Judicial Court announced a new three-step framework for cases where both alimony and child support "is contemplated," requiring the judge to
"(1) Calculate alimony first, in light of the statutory factors enumerated in [G. L. c. 208, § 53 (a),] and the principle that . . . the amount of alimony should be determined with reference to the recipient spouse's need for support to allow the spouse to maintain the lifestyle enjoyed prior to the termination of the parties' marriage . . . .  Then calculate child support using the parties' postalimony incomes.
"(2) Calculate child support first.  Then calculate alimony, considering, to the extent possible, the statutory factors enumerated in § 53 (a). . . .
"(3) Compare the base award and tax consequences of the order that would result from the calculations in step (1) with those of the order that would result from the calculations in step (2), above.  The judge should then fashion an order which would be the most equitable for the family before the court, considering the mandatory statutory factors set forth in G. L. c. 208, § 53 (a), and the public policy that children be supported as completely as possible by their parents' resources, G. L. c. 208, § 28, and then fashion the order such that it reflects . . . those considerations."
            a.  Alimony calculations.  A judge's determination of the "amount to award [for] alimony generally [is] reviewed for an abuse of discretion."  Cavanagh, 490 Mass. at 405.  Section 53 of the act sets forth the parameters that the judge must follow when determining the amount of alimony:  (1) the judge must consider all relevant factors set forth in G. L. c. 208, § 53 (a); (2) the judge must ensure that the amount does "not exceed the recipient's need or 30 to 35 per cent of the difference between the parties' gross incomes," G. L. c. 208, § 53 (b); and (3) when determining the parties' gross incomes, the judge should generally consider all income sources except for those excluded by G. L. c. 208, § 53 (c).  Moreover, the act did not alter the longstanding principle that, "where the supporting spouse has the ability to pay, 'the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage.'"  Cavanagh, supra at 407-408, quoting Young v. Young, 478 Mass. 1, 6 (2017).  "'[I]t is important that the record indicate clearly that the judge considered all the mandatory statutory factors,' and that the reason for her conclusion is apparent in her findings."  Cavanagh, supra at 408, quoting Zaleski v. Zaleski, 469 Mass. 230, 236 (2014).
            Here, the judge made findings demonstrating that she considered all relevant § 53 (a) factors for which evidence was presented.  The judge considered, among other things, the length of the marriage (spanning more than seventeen years); the parties' economic and noneconomic contributions during the marriage; the wife's "lost economic opportunity as a result of the marriage by leaving a high-paying job to become a stay-at-home parent"; the "upper-middle to upper class" lifestyle enjoyed by the parties during the marriage;[5] the husband's "ability to maintain the marital lifestyle through his investments, gifts from family, and income from employment"; the wife's inability to maintain the marital lifestyle with her current income and the decline in her lifestyle following the parties' separation; and the modest increase in the wife's reported expenses since the divorce.  
            The judge also made extensive findings regarding each party's employment and income, none of which the husband challenges.  The judge determined that both parties were appropriately employed and that, since the divorce, the wife's annual income had increased "only modestly" (from approximately $112,000 in 2018 to approximately $119,000 in 2022), while the husband's income had "increased dramatically" (from approximately $320,000 in 2018 to approximately $410,000 in 2020, over $1 million in 2021, and over $700,000 in 2022).[6]  The judge found that the wife's weekly expenses exceeded her net weekly income by more than $2,300, despite the decline in her postdivorce lifestyle.  The judge further found that the husband had the ability to pay increased alimony that would allow the wife to resume the marital lifestyle, "while [himself] continuing to enjoy the marital lifestyle" that he had maintained postdivorce.
            The husband contends that while the judge "went through an analysis of what income should be included for alimony purposes, [she] did not actually make any alimony calculations at all for 2020, 2021 and 2022 as required by Cavanagh. . . . Instead, the [judge] picked random 'appropriate' numbers for alimony for each year in question" that "have no explanation nor support in the record and are clearly erroneous."  The act, however, does not require judges to make "alimony calculations" according to any specific formula.  Instead, judges have broad discretion to determine the appropriate amount of alimony, subject to the limits set forth in G. L. c. 208, § 53 (b), i.e., that alimony should generally not exceed the recipient's need or thirty to thirty-five percent of the difference in the parties' incomes.  See Young, 478 Mass. at 5.  Here, the alimony amounts determined by the judge (ranging from $1,000 to $1,500 per week) exceeded neither the wife's need (of at least $2,300 per week), nor thirty to thirty-five percent of the difference between the parties' incomes (indeed, the alimony amounts ranged, depending on the year, from 7.6 percent to 17.4 percent of the difference in the parties' incomes).
            The husband's central criticism, however, appears to be that the substantial increase in alimony was not proportionate to the modest increase in the wife's reported expenses.  This contention ignores the judge's findings that (1) while the husband's lifestyle remained elevated after the parties separated, the wife's lifestyle had declined, and thus her reported expenses did not accurately capture the full extent of her need as measured by the marital lifestyle; and (2) the husband's income increased substantially following the divorce, thereby rendering him able to pay an increased amount of alimony sufficient to allow the wife to resume the former marital lifestyle.[7]  Where, as here, the judge's findings reflect appropriate consideration of the relevant § 53 (a) factors, and the alimony amounts utilized by the judge in step one of the Cavanagh framework did not exceed (1) the percentage cap in § 53 (b), (2) the wife's need, or (3) the husband's ability to pay, the judge did not abuse her discretion.
            b.  Tax consequences.  The husband next contends that the judge erred in failing to consider tax consequences when determining the most equitable order for the parties in step three of the Cavanagh framework.  See Cavanagh, 490 Mass. at 410.  As an initial matter, we agree with the husband that the judge erroneously found that the husband's alimony obligation was not tax deductible to him.  We nevertheless conclude that the error as applied to the husband was harmless.  As the wife notes in her brief, the judge's failure to consider the fact that alimony is treated as taxable income to the wife and deductible by the husband was more likely to prejudice the wife than the husband.
            We further conclude that the husband has failed to otherwise demonstrate error in the judge's omission of tax consequences from the factors that she considered in step three of the Cavanagh framework.  "[W]here the issue of tax consequences has been raised and the judge has been provided with 'appropriate evidence in the record,' . . . the judge should consider the tax consequences arising from a judgment."  L.J.S. v. J.E.S., 464 Mass. 346, 350 (2013).[8]  "But '[i]f parties do not request the judge to consider particular tax consequences and do not introduce reasonably instructive evidence bearing on those tax issues, the probate judge is not bound to grapple with the tax issues.'"  Jones v. Jones, 103 Mass. App. Ct. 223, 239 (2023), quoting Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 866 (1989).
            Here, the husband neither presented "reasonably instructive evidence" of the potential tax consequences at trial, Fechtor, 26 Mass. App. Ct. at 866, nor filed "a postjudgment motion . . . , supported by citations to tax law and regulations and by illustrative calculations, to amend the judgment so as to alleviate undue adverse tax consequences."  Id. at 867.  He nevertheless asserts that because the parties' tax returns and supporting W-2 and K-1 forms were admitted as uncontested exhibits, the judge had sufficient evidence "to calculate each party's effective tax rate."
            Probate and Family Court judges are not, however, expected to be tax experts.  A judge's obligation to consider the potential tax consequences of a support order generally will not be triggered by a party's merely providing copies of tax returns with supporting income documentation in the ordinary course of litigation.[9]  "The parties have the responsibility to present to the Court the tax consequences of proposed orders."  Child Support Guidelines § II(A)(2) (Aug. 2021).  Judges are required to consider the parties' submissions specifically illustrating the potential tax consequences of support orders; judges are not required to determine the potential tax consequences themselves.  See L.J.S., 464 Mass. at 350-351; Fechtor, 26 Mass. App. Ct. at 866.  Accordingly, although step three of the Cavanagh framework requires judges to compare the tax consequences of the orders resulting from steps one and two, Cavanagh, 490 Mass. at 410, nothing in that decision changes the well-settled rule that the parties are responsible for presenting the judge with "reasonably instructive evidence" of the potential tax consequences.  Fechtor, supra.[10]  Likewise, the judge's obligation to consider the tax consequences "should not be taken to mean the judge must minimize tax consequences as a result of those considerations" (emphasis added).  L.J.S., supra at 352.  Where the parties have presented sufficient evidence of the tax consequences, the judge must consider that evidence along with many other factors for purposes of determining the "most equitable [order] for the family."  Cavanagh, supra.  But here the husband failed to present such evidence.
            2.  Alimony.  The husband contends that the judge erroneously disregarded the parties' intentions expressed in their agreement by changing the "alimony structure" applicable to the husband's bonus income.[11]
            "A judge who modifies a divorce judgment [incorporating a merged agreement] does not write on a tabula rasa.  To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties" (citation omitted).  Katzman v. Healy, 77 Mass. App. Ct. 589, 598 (2010).  "Although a merged provision [in a separation agreement] does not survive the judgment as a binding contract, we nevertheless will review the [judge's] findings [and rulings] to determine whether the judge gave appropriate consideration to the parties' intentions as expressed in their written agreement," while also ensuring that the judge interpreted the agreement "in a manner consistent with the over-all purposes of G. L. c. 208" (quotations and citation omitted).  Jones v. Jones, 101 Mass. App. Ct. 673, 681, 683 (2022).  
            The husband contends that the judge erred by "failing to take heed of the parties' prior agreement that the [husband] pay the [wife] $18,000 as additional alimony from his annual bonus income, irrespective of the actual amount of his bonus, instead modifying that provision and including the entirety of the [husband's] annual bonus in alimony calculations."  He asserts that the "fluctuat[ing]" nature of his bonus "and increase[] overall [in the amount of his bonus] post-divorce did not warrant changing the parties' negotiated deal."  The judge did not, however, cite those factors as the basis for eliminating the annual $18,000 payment and instead considering the husband's bonus income when calculating his weekly alimony obligation.  Rather, the judge found that the dramatic increase in the husband's total postdivorce income warranted modification of the parties' agreement regarding alimony -- in both amount and structure.  Given that the husband's total income increased by an amount more than three times that of his bonus income reported at the time of the divorce, the judge reasonably could have concluded that the husband now possesses the ability to pay alimony from his bonus income on a weekly basis, despite only receiving that bonus income once per year.  Although it would have been helpful had this reasoning been made explicit, we see no abuse of discretion, where (1) the judge considered the parties' intentions expressed in their agreement, and (2) a reasonable basis for departing from those intentions "consistent with the over-all purposes of G. L. c. 208" is apparent in the judge's findings.[12]  Jones, 101 Mass. App. Ct. at 683.  In any event, the husband has not demonstrated any prejudice resulting from that departure.[13]
            3.  Child support.  The husband contends that the judge abused her discretion by increasing child support above the minimum presumptive order without making sufficient findings demonstrating that the increase was warranted by the children's needs.  This contention is unpersuasive.[14]
            The guidelines presumptively "apply in all cases . . . modifying a child support order."  Child Support Guidelines preamble (Aug. 2021).  Where "the parties' combined gross income exceeds the maximum level at which the guidelines are strictly applicable, a judge has discretion to adjust upward from the 'minimum presumptive level of support,' i.e., the award applicable at the maximum combined income level" (citation omitted).  M.C. v. T.K., 463 Mass. 226, 233 (2012).  "In cases where [the parties'] combined available income is over $400,000 [or $250,000 prior to October 2021[15]], the guidelines should be applied on the first $400,000," and the judge "should consider the award of support at the $400,000 level as the minimum presumptive order.  The child support obligation for the portion of combined available income that exceeds $400,000 shall be at the discretion of the [judge]."  Child Support Guidelines § II(C)(2) (Aug. 2021).  An award of additional support above the minimum presumptive order based on income that exceeds $400,000 is not characterized as a deviation by the guidelines, and the guidelines do not require the judge to make specific findings regarding the children's needs when ordering such additional support.  See id.  
            By contrast, in all cases where the judge orders support above the presumptive guidelines amount because the payor provides "substantially less than one-third" of the parenting time, Child Support Guidelines § IV(B)(8) (Aug. 2021), or because the presumptive order would result in a "gross disparity" in the parties' standards of living, id. at § IV(B)(11), the guidelines characterize an upward adjustment on either of these bases as a deviation requiring specific findings.  See id. at § IV(A).
            Here, the judge's findings reflect ample justification for awarding child support above the minimum presumptive order.  The judge found that the minimum presumptive order was "inappropriate" based on the husband's "high level of income," and she "exercise[d] [her] discretion to consider the portion of the parties' available annual income that exceed[ed] $250,000/$400,000 (depending on the [g]uidelines year being applied)."  Although this alone was a sufficient basis for the amount of child support ordered by the judge, she also identified two separate grounds for an upward deviation:  (1) the children spending substantially more than two-thirds of their time in the wife's care; and (2) to avoid a gross disparity in the standard of living between the parties' households.
            The husband contends that the judge was required, but failed, to make findings "defining the children's needs," so as to "explain the basis for increasing the child support amount" above the minimum presumptive order.  As previously noted, the guidelines do not characterize discretionary additional support based on income above $400,000 as a deviation necessitating specific findings, and this alone was a sufficient basis for the amount of child support ordered by the judge.  See Child Support Guidelines § II(C)(2) (Aug. 2021).  Assuming arguendo that the child support order must also be evaluated as based on an upward deviation, the judge found that such a deviation was necessary to avoid a gross disparity in the standard of living between the parties' households.  In support of that deviation ground, the judge made sufficient findings regarding the children's needs by comparing the parties' lifestyles[16] and identifying areas where the children's expenses had increased.  See Brooks v. Piela, 61 Mass. App. Ct. 731, 737 (2004) ("[C]onsistent with principles underlying the guidelines, children's needs are to be defined, at least in part, by their parents' standard of living and . . . children are entitled to participate in the noncustodial parent's higher standard of living when available resources permit").  Moreover, the judge made findings sufficient to support an upward deviation based on the wife being responsible for substantially more than two-thirds of the children's care.[17]  See Child Support Guidelines § II(D)(3) (Aug. 2021).  Accordingly, we are not persuaded that the judge abused her discretion in ordering the husband to pay child support above the minimum presumptive amount.[18]
Judgment affirmed. 
 
footnotes

 
            [1] As is our custom, we use the names appearing on the complaint for divorce, notwithstanding that the wife has resumed using her former surname of Armstrong.
            [2] The husband testified that the Caidlyn distributions consisted of "ordinary income," "return of capital," and "capital gains."
            [3] The judge also found that modification of child support was warranted because there was an inconsistency between the amount of child support required by the parties' 2020 agreement and the minimum presumptive order resulting from an application of the Child Support Guidelines in effect at the time of the modification proceedings.  See Child Support Guidelines § III(A) (Aug. 2021).
            [4] The judge increased the husband's alimony and child support obligations retroactively to July 2, 2020, the date that the husband received notice of the wife's counterclaim for modification.
            [5] During the marriage, the parties owned two homes and a boat, "vacationed regularly, drove nice cars, and belonged to a sailing club, a golf club, and a tennis club."
            [6] In determining the parties' incomes for purposes of alimony, the judge excluded all distributions from Funds IV and V.  Although the agreement, for such purposes, expressly excluded only the husband's investment income (which included income from Funds IV and V), the judge found it "equitable to likewise" exclude the wife's income from Fund IV.  The husband contends that this was an abuse of discretion, asserting that if the parties had intended to also exclude the wife's Fund IV income, they could have added language to that effect in the agreement, but they did not.  We are unpersuaded for two reasons.  First, the act requires judges to exclude from alimony calculations all capital gains, dividends, and interest income derived from assets equitably divided between the parties in the divorce, see G. L. c. 208, § 53 (c) (1), and thus the wife's Fund IV distributions were likely excluded by the statute, if not by the agreement.  Second, assuming arguendo that the judge was required to consider the wife's Fund IV income (which we do not suggest), even with the inclusion of that income, the amount of alimony awarded would not exceed the wife's need as measured by the marital lifestyle.
            [7] We think it is reasonable to infer from the judge's findings that the husband's income at the time of the divorce (approximately $320,000 per year) was not sufficient to maintain the "upper-middle to upper class" marital lifestyle in two separate households.  See Young, 478 Mass. at 7.
            [8] This principle applies to judgments ordering the payment of alimony and child support, L.J.S., 464 Mass. at 350-351, and to judgments dividing marital property.  Id. at 350 n.3.
            [9] All parties to divorce and modification proceedings are required to exchange copies of their tax returns and supporting income documentation during the course of litigation.  See Supplemental Probate and Family Court Rule 410(a)(1)(a) (2012).
            [10] As for the husband's claim that the judge improperly disregarded evidence of tax consequences presented by the wife, this argument fails because the husband argued below that such evidence should be disregarded as lacking probative value.  To whatever extent disregarding the evidence was error, it was invited error, and the party that invited it cannot challenge it on appeal.  See Box Pond Ass'n v. Energy Facilities Siting Bd., 435 Mass. 408, 422 n.14 (2001).
            [11] The husband also claims that the judge improperly considered his Fund VI and Caidlyn distributions when calculating alimony, despite the agreement's exclusion of income from investments and inherited assets.  While the husband's Fund VI distributions do appear to be investment income, we are not persuaded that their inclusion warrants reversal.  Even if the judge had excluded the Fund VI distributions from the husband's income, the amount of alimony awarded would be less than eleven percent of the difference in the parties' incomes -- far below the thirty to thirty-five percent cap in G. L. c. 208, § 53 (b).  With respect to the Caidlyn distributions, the judge rejected the husband's claim that they constituted income from an inherited asset, instead finding that the husband's interest in Caidlyn was a gift from his still-living father.  There is nothing in the record showing that this finding was clearly erroneous.  The husband argues in the alternative that the Caidlyn distributions constituted investment income; however, this argument is waived because it was not raised below.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).
            [12] The judge's inclusion of the husband's bonus income when calculating alimony is consistent with the act's mandate that income "shall be defined as set forth in the . . . child support guidelines," G. L. c. 208, § 53 (b), and the guidelines specifically include "bonuses" in the list of income sources that judges should consider.  Child Support Guidelines § I(A)(6) (Aug. 2021). 
            [13] The husband has not identified, nor do we see on this record, any financial hardship likely to arise from the judge's decision to eliminate his obligation to pay $18,000 on receipt of his year-end bonus and instead require him to pay weekly alimony equivalent to less than nine percent of his total gross weekly income.
            [14] We are likewise unpersuaded by the husband's claim that the judge, in determining the amount of retroactive support to be paid, abused her discretion by failing to consider his past contributions to the eldest child's extraordinary expenses.  The judge made a number of findings reflecting consideration of the parties' respective contributions to those expenses, including that the husband paid approximately $73,700, and the wife paid approximately $30,000, for the child to attend two boarding programs and a transitional program recommended by a consultant.  Child support is calculated as a percentage of parental income, see Emery, 91 Mass. App. Ct. at 508, and the wife paid roughly twenty-nine percent of the eldest child's total extraordinary expenses despite earning only eighteen percent of the parties' combined available income.  Accordingly, we cannot say it was an abuse of discretion for the judge not to reallocate to the wife a portion of the extraordinary expenses paid by the husband.
            [15] The 2021 guidelines (issued August 2, 2021; effective October 4, 2021) increased the maximum combined available income amount from $250,000 to $400,000.  Compare Child Support Guidelines § II(C)(2) (Aug. 2021), with Child Support Guidelines § II(C)(2) (May 2018). 
            [16] The judge found that the husband was able to maintain a "lavish" lifestyle in Colorado (noting his membership in a private golf club in Telluride requiring initial and ongoing fees in excess of $100,000, and his ownership of a Porsche worth $138,000), while the wife's postdivorce lifestyle (and by extension the children's) had declined.  The husband claims that the characterization of his lifestyle as "lavish" was clearly erroneous; however, we are not persuaded based on the record before us.
            [17] The judge found that the husband's relationship with the children had deteriorated after the divorce, he permanently relocated to Colorado, and, as of the modification trial, he had not seen the children in approximately one year.  The judge accordingly concluded that an upward deviation was warranted because the wife was "solely responsible for [the children's] care and meeting their needs."
            [18] The wife's request for appellate fees is denied.